James C. Bastian, Jr. – Bar No. 175415
Ryan D. O'Dea – Bar No. 273478
**SHULMAN HODGES & BASTIAN LLP**
8105 Irvine Center Drive, Suite 600
Irvine, California 92618
Telephone:     (949) 340-3400
Facsimile:     (949) 340-3000
Email: jbastian@shbllp.com; rodea@shbllp.com

Attorneys for ASR Constructors, Inc., a California corporation,
Another Meridian Company, LLC, a California limited liability company,
and Inland Machinery, Inc., a California corporation,
the Debtors and Debtors in Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION

| | |
|---|---|
| In re<br><br>**ASR CONSTRUCTORS, Inc.,**<br>**a California corporation,**<br><br>Debtor. | Case No.  6:13-bk-25794-MH<br>Chapter  11<br><br>Jointly Administered with:<br>Case No.  6:13-bk-27529-MH<br>Case No.  6:13-bk-27532-MH |
| In re<br><br>**ANOTHER MERIDIAN COMPANY, LLC, a**<br>**California limited liability company,**<br><br>Debtor. | **DEBTOR'S MOTION FOR ORDER ORDER AUTHORIZING THE DEBTOR TO:**<br><br>**(1)  CONDUCT AN AUCTION SALE OF ASSETS OF THE ESTATE (MACHINERY AND EQUIPMENT) FREE AND CLEAR OF LIENS PURSUANT TO BANKRUPTCY CODE SECTION 363(b) AND (f);** |
| In re<br><br>**INLAND MACHINERY, INC., a**<br>**California corporation,**<br><br>Debtor. | **(2)  EMPLOY AUCTIONEER AND PAY COMPENSATION TO THE AUCTIONEER;**<br><br>**(3)  AND GRANTING RELATED RELIEF;**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATIONS OF ALAN REGOTTI AND ZAC DALTON IN SUPPORT THEREOF** |
| <u>**Affects:**</u><br>☐   All Debtors.<br>☐   ASR Constructors, Inc.<br>☐   Another Meridian Company, LLC<br>☒   Inland Machinery, Inc. | <u>**Hearing Date:**</u><br>Date:   December 9, 2014<br>Time:  2:00 p.m.<br>Place:  Courtroom 303<br>          3420 Twelfth Street<br>          Riverside, California |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

1

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 1

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION .................................................................................................. 6

II. RELEVANT FACTS .......................................................................................... 8

    A. Commencement of the Debtors' Bankruptcy Cases and Background Facts .......... 8

        1. ASR Constructors, Inc. ............................................................ 9

        2. Another Meridian Company, LLC ............................................ 9

        3. Inland Machinery, Inc. ............................................................ 10

    B. The Cash Collateral Stipulation ..................................................... 10

    C. The Surcharge Stipulation............................................................... 12

    D. The Marketing of Inland's Assets .................................................. 13

    E. The Proposed Auction Sale of Inland's Assets............................... 13

    F. Liens and Encumbrances Against the Assets and Their Proposed Treatment Through the Sale.......................................................... 15

    G. Tax Consequences .......................................................................... 17

    H. Reservation of Rights Under Bankruptcy Code Section 506(c) ............ 17

    I. The Proposed Auction Date, Proposed Auctioneer and Proposed Auction Contract.................................................................. 17

    J. Request for Authorization to Use the Auction Sale Proceeds ............... 21

    K. Approval of the Auction Motion Serves the Best Interests of the Estate and Creditors................................................................. 21

III. ARGUMENT .................................................................................................. 22

    A. The Court May Authorize the Sale When There is a Good Faith Purchaser......... 22

        1. Sound Business Purpose .......................................................... 22

        2. The Auction Sale Serves the Best Interests of Estate and Creditors.......... 23

        3. Accurate and Reasonable Notice ............................................. 24

    B. The Sale is Made In Good Faith ..................................................... 24

    C. Sale of the Assets Free and Clear of Liens and Encumbrances Should Be Permitted ........................................................................... 25

        1. Section 363(f)(2)- Consent ...................................................... 25

        2. Section 363(f)(4) – Bona Fide Dispute.................................... 25

2

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Page 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

D.      The Auction Sale Does Not Contravene Policy ........................................ 27

E.      Inland May Reserve the Estate's Right for Reimbursement of Costs
Associated With the Preservation and Disposal of Collateral ............................. 28

F.      The Court has Authority to Waive the Fourteen-Day Stay of Sale ....................... 28

IV.    CONCLUSION ............................................................................................... 29

DECLARATION OF ALAN REGOTTI ................................................................... 31

DECLARATION OF ZAC DALTON ....................................................................... 36

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

**Page 3**

# TABLE OF AUTHORITIES

Page

## CASES

In re Atwood,
    124 B.R. 402 (Bankr. S.D. Ga. 1991) ................................................................... 26

In re Braniff Airways, Inc., 700 F.2d 935 (5th Cir. 1983) ............................................. 27

In re Brethren Care of South Bend, Inc., 98 B.R. 927, 934 (Bankr. N.D. Ind.
    1989) ................................................................................................................... 28

In re Continental Air Lines, Inc.,
    780 F.2d 1223 (5th Cir. 1986) ..................................................................... 22, 23

In re Crowthers McCall Pattner, Inc.,
    114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) ....................................................... 22

In re Lionel Corp.,
    722 F.2d 1063 (2d Cir. 1983) ..................................................................... 22, 23

In re Milford Group, Inc.,
    150 B.R. 904 (Bankr. M.D. Pa. 1992) .............................................................. 26

In re Walter,
    83 B.R. 14 (Bankr. 9th Cir. 1988) .............................................................. 22, 23

In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981) ....................................... 27

In re Wilde Horse Enterprises, Inc.,
    136 B.R. 830, 841 (Bankr. C.D. Cal. 1991) ..................................................... 22, 24

## STATUTES

Bankruptcy Code Section 102(1) .................................................................................. 24

Bankruptcy Code Section 1107 ..................................................................................... 8

Bankruptcy Code Section 1108 ..................................................................................... 8

Bankruptcy Code Section 363(b) ................................................................................... 22

Bankruptcy Code Section 363(f) ................................................................................... 25

Bankruptcy Code Section 363(f)(2) ............................................................................... 25

Bankruptcy Code Section 363(m) .................................................................................. 24

Bankruptcy Code Section 506(c) ................................................................................... 28

Bankruptcy Code Section 541 ....................................................................................... 22

Section 506(c) ............................................................................................................. 28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

4

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

## RULES

Federal Rule of Bankruptcy Procedure 6004(h) .......................................................................... 28

Federal Rule of Bankruptcy Procedure 6006(d) .................................................................. 28, 29

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

5

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1    TO THE HONORABLE MARK HOULE, UNITED STATE BANKRUPTCY JUDGE,

2    THE OFFICE OF THE UNITED STATES TRUSTEE, AND ALL INTERESTED

3    PARTIES AND THEIR COUNSEL OF RECORD:

4         Inland Machinery, Inc. ("Inland"), one of three affiliated companies which include ASR

5    Constructors, Inc. a California corporation ("ASR") and Another Meridian Company, LLC, a

6    California limited liability company ("Meridian"), each a debtor and debtor in possession

7    (collectively the "Debtors"), brings this Motion for an Order Authorizing the Debtor to: (1)

8    Conduct an Auction Sale of Assets of the Estate (Machinery and Equipment) Free and Clear of

9    Liens Pursuant to Bankruptcy Code Section 363(b) and (f); (2) Employ Auctioneer and Pay

10   Compensation to the Auctioneer; and (3) Granting Related Relief ("Auction Motion").    In

11   support thereof, Inland respectfully represents as follows:

12                              I.    **INTRODUCTION**

13        By the Auction Motion, Inland respectfully requests that the Court enter an order:

14        •    Authorizing Inland to conduct a public auction sale to the highest bidder(s) of

15   certain assets generally described as rental machinery and equipment (collectively the "Assets")

16   no longer needed in the operation of the Inland's machinery and equipment rental business.  A

17   list of the Assets to be sold at auction is set forth below.[1] The auction sale shall be conducted free

18   and clear of any and all liens, encumbrances, claims and/or interests (collectively, the "Liens and

19   Encumbrances") impacting the Assets, with all such Liens and Encumbrances upon the sold

20   Assets to be unconditionally released, discharged and terminated, and with any Liens and

21   Encumbrances not resolved or satisfied through the sale to attach only to the proceeds of the

22   transaction with the same priority, validity, force and effect as they existed with respect to the

23   sold Assets before the closing of the auction sale pending further Court order or agreement with

24   the parties.  **The proposed auction sale is scheduled for December 11, 2014 (time to be**

25   **determined) at the business premises of Ritchie Bros. Auctioneers (America) Inc.**

26

27   [1]    The Assets to be sold do not include all of Inland's machinery and equipment as some of it is still being
        utilized by ASR in the completion of pending projects.  Once pending ASR projects are completed, subject

28      to further motion and Court order at a later date, Inland intends to sell its remaining machinery and
        equipment not included in the current auction sale.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

6

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 6

1   **("Auctioneer") in Perris, California.**  Inland is advised that its largest secured lienholders,

2   Federal Insurance Company ("Federal") and  Berkley Regional Insurance Company ("Berkley"),

3   have no objection to the proposed auction sale, but this will be confirmed prior to the hearing.

4        •      Approving and authorizing Inland to enter into an Auction Contract for the

5   employment of Auctioneer to coordinate the auction sale and authorizing payment of the

6   Auctioneer's compensation that includes the principal terms described below.

7        •      Inland does not believe that any of the Assets to be sold are subject to lease

8   interests.  However, out of an abundance of caution, in the event that it is determined that any of

9   the Assets to be sold are subject to lease interests, provided that there is equity for the Estate and

10   the lessor consents to the sale, authorizing Inland to sell such leased item(s) free and clear of the

11   leasehold interest(s).

12        •      With respect to any Assets sold that are subject to secured or other interests,

13   authorizing Inland to reserve any and all rights the Estate may have under Bankruptcy Code

14   Section 506(c) to surcharge the collateral of any lienholders for the costs the Estate may have

15   incurred in the maintenance of the collateral as well as with the preservation and liquidation of

16   such collateral.

17        •      Directing that the fourteen day stay of the order approving the Auction Motion as

18   provided by Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d), or any other

19   applicable rules, shall not apply and that absent judicial imposition of a stay of the Court order

20   approving the Auction Motion pending appeal, Inland may immediately consummate the actions

21   that are approved by such Court order.

22        •      Authorizing Inland to use the proceeds of the auction sale to make Court

23   approved disbursements to the proposed Auctioneer pursuant to the terms of the Auction

24   Contract.

25        •      The Assets to be sold do not include all of Inland's machinery and equipment as

26   some of it is still being utilized by ASR in the completion of pending projects.  Once pending

27   ASR projects are completed (estimated by January 2015), Inland will need to sell its remaining

28   machinery and equipment not included in the current auction sale.  As such, Inland requests

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1    authority to conduct a further auction sale of its machinery and equipment at a later date under

2    the same terms and conditions of this current auction sale once Inland determines the remaining

3    equipment is no longer necessary for its business operations.

4    •    For such other and further relief as the Court deems just and proper under the

5    circumstances of this case.

6    Before payment of the Auctioneer's fees and expenses, the gross proceeds of the auction

7    sale are estimated to be approximately $126,500.  However, the auction will be unreserved such

8    that there are no minimum bids or reserve prices set on the items in the auction. Every item is to

9    be sold to the highest bidder.  After payment of the Auctioneer's fees and expenses, the net

10    auction proceeds will be held by Inland in a segregated account subject to the liens and cash

11    collateral agreements with Federal and  Berkley or further order of the Court.

12    Finally, approval of the auction sale must be resolved as quickly as possible so that the

13    Inland may coordinate the auction sale and afford time for the proposed Auctioneer to commence

14    advertising of the sale.

15    **II.    RELEVANT FACTS**

16    **A.    Commencement of the Debtors' Bankruptcy Cases and Background Facts**

17    ASR filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on

18    September 20, 2013, Case No. 6:13-bk-25794-MH.

19    Meridian and Inland each filed their voluntary petitions for relief under Chapter 11 of the

20    Bankruptcy Code on October 23, 2013.  Meridian is Case No.  6:13-bk-27529-MH; and Inland is

21    Case No. 6:13-bk-27532-MH.

22    The Debtors are each continuing in possession of their property, and operating and

23    managing their respective business, as debtors in possession pursuant to Bankruptcy Code

24    Sections 1107 and 1108.

25    The Debtors' assets are encumbered by related liens in favor of Federal Insurance

26    Company ("Federal") and Berkley Regional Insurance Company ("Berkley").  The Debtors share

27    common owners.  The Debtors share common principal officers and managers.  Except for the

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

8

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 8

1   San Bernardino County Treasurer and Tax Collector, the creditors listed in the Schedules of

2   Meridian and Inland are substantially the same as obligations already listed in ASR's Schedules.

3         Pursuant to Court order entered on November 1, 2013, the Debtors' Chapter 11 cases are

4   being jointly administered under the case number of ASR.

5         Each of the Debtors are working to wind down their affairs in an orderly fashion as

6   follows:

7         1.      <u>ASR Constructors, Inc.</u>

8         ASR is a general contractor serving the Inland Empire on mainly public works projects.

9   ASR is continuing to move forward with the completion of pending jobs.  It is estimated that

10   pending jobs will be completed by January 2015.

11         2.      <u>Another Meridian Company, LLC</u>

12         Meridian is in the business of real estate.  Meridian is continuing to move forward to

13   conduct orderly sales of its real property[2] assets.  The funds from the sales of the Wilson

14   Property and the Phelan Property are being held in a segregated account subject to the lien of

15   Federal and subject to the Cash Collateral Stipulation and the Surcharge Stipulation discussed

16   below.  Meridian employed Del Mar Commercial Real Estate Services, Inc.,[3] to assist in the

17   listing and marketing for sale of the Perris Property and the San Bernardino Property.

18

19

20   [2]     Wilson Property:  located at 5230 Wilson Street, Riverside, California.  Pursuant to Court order entered on December 17, 2013 (docket 39), Meridian was authorized to sell the Wilson Property and received net proceeds from the sale of approximately $1,899,356.64.

21

22        Perris Property: two parcels of vacant land located in the city of Perris, County of Riverside, CA: Parcel Nos.: 317-270-001 (10.09 acres) and 317-270-012 (9.66 acres) with a value of approximately $470,000.  This property is subject to the cross-collateralized lien in favor of Federal.  The property is currently listed for sale.

23

24        San Bernardino Property: Two parcels of vacant land located in the city of San Bernardino, County of San Bernardino, CA: Parcel Nos.: 0142-042-01  (1.889 acres) and 0269-271-17  (1.3 acres) with a value of $240,000.  This property is subject to the cross-collateralized lien in favor of Federal.  The property is currently listed for sale.

25

26        Phelan Property: Single family residence located at 3758 Kreuer Rd, Phelan, CA 92371: Parcel No.:  3098-051-14 (5 acres).  Pursuant to Court order entered on August 8, 2014 (docket 304), Meridian was authorized to sell the Phelan Property for $59,000 and received net sale proceeds of approximately $51,158.88.

27

28   [3]     Employed pursuant to Court order entered on April 25, 2014 (docket 273).

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

9

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 9

3.    <u>Inland Machinery, Inc.</u>

Inland is in the business of machinery and equipment rental.  ASR rents machinery and equipment from Inland as necessary for its various construction projects.

Inland is continuing to move forward to conduct orderly sales of its machinery and equipment.  Pursuant to Court orders entered on March 19, 2014 (docket 251) and September 29, 2014 (docket 34) Inland was authorized to conduct two auction sales of rental machinery and equipment that was no longer needed in the operation of its business.  The funds from Inland's prior auction sales[4] are being held in a segregated account subject to the liens of Federal and Berkley and subject to the Cash Collateral Stipulation and the Surcharge Stipulation.

The items sold in the prior auctions did not include all of Inland's machinery and equipment as some of it is still being utilized by ASR in the completion of pending projects..

Inland's assets are subject to the cross-collateralized liens of Federal and Berkley.  The Federal and Berkley liens impacting Inland's assets were provided as part of agreements with Federal and Berkley to provide funding for completion of ASR projects, to secure obligations owed to Federal and Berkley under indemnity agreements signed by Inland and otherwise and to forbear from enforcement of remedies available for default.

**B.    The Cash Collateral Stipulation**

The Debtors filed a Motion for Order Authorizing Use of Cash Collateral ("Cash Collateral Motion") (docket 306) seeking authority to use some of Federal's cash collateral in the form of the proceeds from the sale of the Meridian's real properties and Inland's assets to pay overhead expenses of ASR to allow ASR to complete its remaining projects and preserve the remaining assets of all the Debtors.  An opposition to the Cash Collateral Motion was filed by Federal.  The Debtors, Federal and Berkley resolved disputes related to the use of cash collateral and the Cash Collateral Motion and entered into that certain Stipulation Between the Debtors, Federal Insurance Company and Berkley Regional Insurance Resolving Debtors' Motion for Use of Cash Collateral which was filed with the Court on October 28, 2014 (docket 375) ("Cash

---

[4]    The first Inland auction sale generated net proceeds of approximately $320,000 and the second sale generated gross sale proceeds of approximately $360,000.  Prior to the Petition Date, Inland conduct another auction sale of machinery and equipment and generated net sale proceeds of approximately $326,000.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

10

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

**Page 10**

1    Collateral Stipulation").  The Cash Collateral Stipulation was approved by Court order entered

2    on October 31, 2014 (docket 376).   The principal terms of the Cash Collateral Stipulation are:

3                • ASR may use the Adelanto Surplus[5] only to pay the overhead expenses of

4        ASR in the specific categories and line items as set forth in the Budget in the lesser

5        amount of (1) the budgeted amount with an allowed variance of no more than 10% per

6        line item and (2) the percent of ASR's actual monthly expenditure by line item applicable

7        to Federal under the Budget.  ASR may only use the Sale Proceeds Cash Collateral as

8        may be ordered by the Bankruptcy Court in connection with the Cash Collateral Motion.

9        Berkley agrees to advance to ASR such additional funds necessary in Berkley's absolute

10       and sole discretion to complete the Projects, including as necessary to fund overhead

11       expenses of ASR as set forth in the Budget pertaining to the Adelanto Project and the

12       Adelanto Surplus.  Nothing in this Stipulation shall affect the terms of the Previous

13       Stipulation which remain fully enforceable and any and all rights Berkley has as to the

14       Adelanto Project and the BCCD Project will not be affected by the terms of this

15       Stipulation.  Federal does not consent to any other use of cash collateral.

16            In addition to the rights Berkley currently enjoys as surety with respect to the Adelanto

17   Project, and notwithstanding any dispute or claim which may exist with respect to the Berkley

18   Pre-Petition Lien, Berkley was further granted a first priority security interest in the Adelanto

19   Surplus to the limited extent Berkley provides financing to ASR that is actually used by ASR to

20   pay overhead expenses of ASR: (1) in the specific categories, line items and amounts as set forth

21   in the Budget with an allowed variance of no more than 10% per line item, and (2) for which

22   overhead expenses ASR would otherwise have authority under the Cash Collateral Stipulation to

23   use the Adelanto Surplus.  Federal shall subordinate the Federal Pre-Petition Lien against any

24   proceeds received on account of the Adelanto Project, including the Adelanto Surplus, to the

25   Berkley Adelanto Lien.  Federal does not consent to any other subordination of its rights.

26

27

28

[5]        Capitalized have the meaning set forth in the Cash Collateral Stipulation (docket 375).

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

**C.      The Surcharge Stipulation**

The Debtors filed a Motion for Order Authorizing Surcharge of Collateral Pursuant to 11 U.S.C. §506(c) ("Surcharge Motion") (docket 308) seeking a $420,000 surcharge of Federal's first priority lien against Federal's collateral to cover the costs and expenses incurred by the Debtors' professionals and for expenses incurred by the Debtors to preserve and realize value in Federal's collateral.  An opposition to the Surcharge Motion was filed by Federal.  The Debtors and Federal resolved disputes related to Surcharge Motion and entered into that certain Stipulation Between the Debtors and Federal Insurance Company Resolving Debtors' Motion for Order Authorizing Surcharge of Collateral Pursuant to 11 U.S.C. 506(c) which was filed with the Court on November 6, 2014 (docket 379) ("Surcharge Stipulation").  The Surcharge Stipulation was approved by Court order entered on November 10, 2014 (docket 382).   The principal terms of the Surcharge Stipulation are:

- The Debtors may surcharge Federal's collateral from the proceeds of the sale of the Wilson Property,[6] the Phelan Property and the Equipment, in the amount of $250,000 ("Stipulated Surcharge").  The Stipulated Surcharge shall only apply to the professional fees and expenses incurred during the Professional Fee Surcharge Period and expenses claimed by the Debtors in the Surcharge Motion, including amounts contained in the First Interim Fee Applications.

- The Debtors reserve the right to seek, and Federal reserves the right to object to, any additional surcharge for periods beyond the Professional Fee Surcharge and other expenses incurred by the Debtor in the disposition of collateral which may occur from and after the dates covered in the Surcharge Motion and for fees incurred after the date of the First Interim Fee Applications.

The Stipulated Surcharge shall be paid from proceeds being held by Meridian to the extent of $175,000 and proceeds held by Inland to the extent of $75,000.   The Stipulated Surcharge shall be released in these amounts from the segregated accounts maintained by

---

[6]      Capitalized have the meaning set forth in the Surcharge Motion and Surcharge Stipulation.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1  Meridian and Inland and transferred to the Debtors current Debtor in Possession accounts

2  maintained by each of the Debtors to be used by each Debtor, in its discretion, to pay all court

3  approved Professionals' fees and expenses in each of the Debtors' cases and to pay ongoing

4  expenses of ASR to complete the existing projects and otherwise administer the bankruptcy

5  estates.

6  **D.    The Marketing of Inland's Assets**

7      Inland has been investigating alternatives for maximizing the value of its assets for the

8  benefit of all of its creditors and other parties in interest.

9      Inland has contacted or has been contacted by parties who have expressed an interest in

10 the purchase of Inland's assets.  Several interested parties have met with Inland's management

11 and/or performed due diligence.  Inland received approximately six (6) offers from such parties.

12 Inland received offers from these parties to either buy the assets outright or to conduct an auction

13 but most offered only bids that were too low or subject to significant contingencies.  The outright

14 offers were much lower than the projected auction sale proceeds.  When Inland considered all

15 offers from parties to conduct an auction, Inland chose the Auctioneer because Inland is

16 comfortable with the Auctioneer in that the Auctioneer has conducted successful auctions for

17 Inland in the past and Auctioneer's proposal for compensation is competitive.  In light of the

18 current economic environment, Inland's financial condition and the fact that Inland is no longer

19 using the Assets to be sold, Inland believes the only option available is the orderly auction sale of

20 the Assets of related to its equipment and machinery rental business.  As such, it appears that an

21 auction sale of the Assets is the best way to maximize value for creditors and will be more

22 beneficial to the Estate as compared to attempting to sell each item on a piecemeal basis.

23 **E.    The Proposed Auction Sale of Inland's Assets**

24     The Assets which are the subject of the Auction Motion are generally described as

25 equipment and machinery used in Inland's rental business and.  A list of the principal items to be

26 included in the auction is as follows:

27 ////

28 ////

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

13

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 13

| Item # | Description | Estimated Value |
|---|---|---|
| 1069 | 200 International Truck Rollback | $15,000 |
| 1089 | 1995 Utility High Boy | $12,000 |
| 1102 | 1999 Ranco End Dump | $15,000 |
| 1112 | 2009 Aztex Trailer | $2,000 |
| 1132 | 2003 Freightliner Water Truck | $7,000 |
| 3019 | 2007 Komatsu Backhoe | $20,000 |
| | John Deere Skiploader | $10,000 |
| | JLG Forklift | $13,000 |
| | Skyjack Manlift | $4,000 |
| | Thomas Skidsteer | $4,000 |
| | Trench Shield 4 x 20 | $2,000 |
| | Quantity backhoe buckets | $2,000 |
| | Quantity skidsteer attachments | $3,000 |
| | Quantity scaffold jacks and planks | $2,500 |
| | Masonry saw | $500 |
| | Masonry mixers (2) | $1,500 |
| | Miscellaneous industrial items | $1,500 |
| | Trench plates (6) | $6,500 |
| | Pallets of miscellaneous items | $5,000 |
| | Total | $126,500 |

As Inland is winding down its affairs, Inland may determine there will be additional items to be included in the auction sale. As such, Inland requests authority to include any additional items in the current auction that Inland determines prior to the auction date are items no longer be necessary for Inland's business operations.

The Assets to be sold do not include all of Inland's machinery and equipment as some of it is still being utilized by ASR in the completion of pending projects. Once pending ASR projects are completed (estimated by January 2015), Inland will need to sell its remaining machinery and equipment not included in the current auction sale. As such, Inland requests authority to conduct a further auction sale of its machinery and equipment at a later date under

14

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 14

1    the same terms and conditions of this current auction sale once Inland determines the remaining

2    equipment is no longer necessary for its business operations.

3        Inland does not believe that any of the Assets to be sold are subject to lease interests.

4    However, out of an abundance of caution, in the event that it is determined that any of the Assets

5    are subject to a lease interest, such leased items will only be sold if there is equity for the Estate

6    and the lessor consents to the sale.

7        Inland believes that the current auction sale may generate gross proceeds of

8    approximately $126,500 based on the current business environment.  However, the auction will

9    be unreserved such that there are no minimum bids or reserve prices set on the items in the

10   auction. Every item is to be sold to the highest bidder.  Through the competitive bidding of a

11   public auction sale, it is anticipated that Inland will receive the best and highest value for the

12   Assets and therefore, the ultimate sale price of the Assets will be fair and reasonable.

13   **F.    Liens and Encumbrances Against the Assets and Their Proposed Treatment**

14        **Through the Sale**

15        The following chart sets forth and accounts for all of the recorded liens and

16   encumbrances against described in the Assets and their proposed treatment through the sale:

17

| Creditor | Description | Estimated Amount Owed | Treatment of Lien Through the Sale |
|---|---|---|---|
| Federal | UCC-1 Filing No. 12-7339143518 filed 11/28/12; Amendment No. 13-73536425 filed 3/22/13;  Amendment No. 13-73522998 filed 3/15/13;  Amendment No. 13-73517704 filed 3/11/13 and Amendment No. 13-73513989 filed 3/6/13 | $171,597,580[7] | Pursuant to Bankruptcy Code section 363(f)(2) this lien will be released, discharged and terminated at the close of escrow and the Assets will be sold free and clear of this lien and the lien will attach to the sale proceeds, if any, in the same validity and priority as existed prior to the sale. |

---

[7]    Claim #2 on ASR's Claims Register, Claim #3 on Meridian's Claims Register and Claim #2 on Inland's
Claims Register.  Each claim amount is $171,597,580.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

**Page 15**

| Creditor | Description | Estimated Amount Owed | Treatment of Lien Through the Sale |
|---|---|---|---|
| Berkley | UCC-1 Filing No. 13-7366919227 filed 6/26/2013 | $15,571,500[8] | Pursuant to Bankruptcy Code section 363(f)(2) this lien will be released, discharged and terminated at the close of escrow and the Assets will be sold free and clear of this lien and the lien will attach to the sale proceeds, if any, in the same validity and priority as existed prior to the sale. |
| Riverside County Treasurer and Tax Collector | Proof of claim against Inland asserting a secured claim of $63,639.66.  Tax lien recorded on 11/6/2013, document number 2013-0527072 | $63,639.66. | Pursuant to Bankruptcy Code sections 363(f)(1) and 363(f)(5) this lien will be released, discharged and terminated at the close of escrow and the Assets will be sold free and clear of this lien and the lien will attach to the sale proceeds, if any, in the same validity and priority as existed prior to the sale.<br><br>This lien is the subject of a bona fide dispute.  The lien was recorded after the Petition Date in violation of the automatic stay under Bankruptcy Code Section 362. Inland asserts that under applicable federal bankruptcy law, the lien is invalid as any action taken in violation of the automatic stay is void as a matter of law.  See, In re Schwartz, 951 Fed.2d, 596 (9th Cir. 1992).<br><br>Furthermore, Inland asserts there are causes of action under Bankruptcy Code Section 549 to have the lien set aside in that it was recorded after the Petition Date the lien was not authorized by the Bankruptcy Code nor order of the Bankruptcy Court. |

---

[8]     Claim #42 on ASR's Claims Register, Claim #5 on Meridian's Claims Register and Claim #s 4 and 5  on Inland's Claims Register.  Each claim amount is $15,571,500.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

16

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 16

1    In summary, the sale shall be conducted free and clear of any and all Liens and

2 Encumbrances impacting the Assets, with all such Liens and Encumbrances upon the Assets to

3 be unconditionally released, discharged and terminated, and with any Liens and Encumbrances

4 not resolved or satisfied through the sale to attach only to the proceeds of the transaction with the

5 same priority, validity, force and effect as they existed with respect to the sold assets before the

6 closing of the sale pending further Court order or agreement with the impacted lienholder.

7    Inland desires to sell the Assets quickly in order stop administrative costs associated with

8 the Assets and delays that could result from having to first resolve any disputes related to secured

9 claims that may negatively impact the benefits of the sale.  As such, selling the Assets pursuant

10 to Bankruptcy Code Sections 363(b)(1) and (f) free and clear of any and all liens and

11 encumbrances, with such Liens and Encumbrances not released, resolved or satisfied through the

12 auction sale to attach to the auction sale proceeds in the same validity and priority as prior to the

13 Petition Date pending agreement with the lienholder creditor or further order of the Court is

14 proper.

15 **G.    Tax Consequences**

16    At this time, Inland does not know what the capital gains taxes liability will be, if any,

17 generated by the sale.  In the event that there is any tax liability generated from the sale, it is

18 anticipated that such taxes will be paid by the sale proceeds.

19 **H.    Reservation of Rights Under Bankruptcy Code Section 506(c)**

20    Inland will reserve any and all rights the Estate may have under Bankruptcy Code Section

21 506(c) to surcharge the collateral of any lienholders for the costs the Estate may have incurred in

22 the maintenance of their respective collateral as well as with the preservation and liquidation of

23 such collateral.

24 **I.    The Proposed Auction Date, Proposed Auctioneer and Proposed Auction Contract**

25    Inland proposes to liquidate the Assets by auction to the highest bidder and without any

26 minimum price on December 11, 2014 (time of day to be determined).  The auction sale will be

27 conducted at the Auctioneer's business premises in Perris, California. Approval of the auction

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

sale must be resolved as quickly as possible so that the Inland may coordinate the auction sale

and afford time for the proposed Auctioneer to commence advertising of the sale.

Inland requests authorization to employ Ritchie Bros. Auctioneers (America) Inc. as the

auctioneer to coordinate the auction sale and authorization to pay Auctioneer's compensation

pursuant to the terms an Auction Contract that includes the following principal terms (Inland is

referred to as the "Owner" and the Assets are referred to as the "Equipment" in the following

summary):

1.    Sale Date: The Auctioneer shall, as agent of the Owner, offer the Assets, together with any additional items delivered by the Owner to the auction site for sale, in whole or in party, pursuant to the Bankruptcy Court order to be granted, at unreserved public auction on or about the December 11, 2014, at the City of Perris, in the State of California.

2.    Payment: The Auctioneer shall make payment to the Owner within twenty-one (21) days after the auction, the amount due and owing to the Owner from monies collected from the sale of the Equipment after making all deductions permitted under this Contract.

3.    Commission: The Auctioneer shall be entitled, at the time of the auction, to a commission of nine percent (9%) based on the gross sale price of the Equipment or any part thereof.

4.    Other: The Auctioneer shall:
a.    allow the Owner access to records concerning the sale of the Equipment at the auction excluding the names or contact information of the buyers thereof;
b.    supervise the preparation and organization of the auction;
c.    provide auctioneers and accountants required for an auction of this type;
d.    ensure on-site food catering services are available to those in attendance at the auction;
e.    provide listing catalogs of the lots offered for sale to potential buyers at the auction; and.
f.    collect and remit State and local sales tax arising upon the sale of the Equipment at the auction.

5.    Sale Site: The Auctioneer shall provide, at no cost to Owner, a suitable site for conduct of the auction.

6.    Refurbishing: The Owner shall:
a.    paint, clean, and refurbish, prior to the auction, the Equipment to a standard acceptable to the Auctioneer.  Should the Auctioneer organize and pay for painting, cleaning, or refurbishing any part of the Equipment, the Auctioneer shall be

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 18

reimbursed for these costs plus ten percent (10%), provided that the cost shall not exceed $11,500 without authorization from the Owner, and

        b.     reimburse the Auctioneer for the cost of fuel and batteries as the Auctioneer deems necessary for demonstration and sale of the Equipment.

      7.    <u>Delivery</u>: The Owner shall deliver the Equipment, at Owner's cost, to the auction site on or before the 1st day of December 2014:

        a.     in good operating condition, free of material defects except as disclosed to the Auctioneer, with adequate fuel and batteries and starting at the key;

        b.     free of hazardous materials other than normal operating fuels, oils, and lubricants;

        c.     in a condition equivalent to or better than its condition when viewed by the Auctioneer's representative prior to the auction sale; and

        d.     in compliance with all applicable EPA rules and regulations;

        e.     together with all documents evidencing the Owner's title, and/or necessary to transfer title, to the Equipment, properly endorsed;

        f.     The Owner shall assign Power of Attorney to the Auctioneer for the limited purpose of executing on the Owner's behalf, all documents required to transfer title to, and permit registration or ownership of, any part of the Equipment by the purchaser thereof.

      8.    <u>Searching and Title Documents:</u> The Owner shall:

        a.     conduct searches or use other means available, as deemed necessary by the Owner for the disclosure of liens and encumbrances, and include all such creditors in Bankruptcy Court notices seeking authority under 11 USC § 363 to sell the Equipment; in no case shall the Owner have a duty to conduct such searches, nor be responsible for the result thereof; and

        b.     pay a document administration fee of $65 per unit for each item of Equipment requiring title or registration documents.

      9.    <u>Risk of Loss, Insurance:</u> The Owner shall:

        a.     be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of the Auctioneer, its agents or employees, until the earliest of: (i) the removal of the Equipment from the auction site by the purchaser; or (ii) receipt by Owner of all proceeds from the sale of the Equipment; and

        b.     insure the Equipment, with the Auctioneer as additional insured, to its fair market value against all perils so that in the event of damage to, or destruction of, the Equipment or any part thereof, all insurance proceeds shall be credited to the gross proceeds of the auction and payment made to the Auctioneer forthwith for all deductions permitted by this Contract; and

        c.     upon request, provide Auctioneer with a copy of the insurance certificate, or other documentation evidencing the Auctioneer as an additional insured, to the satisfaction of the Auctioneer.

      10.    <u>Indemnity:</u> The Owner shall defend, indemnify and save the Auctioneer, its parents, subsidiaries and affiliates, and each of their officers, directors, shareholders, employees, and agents harmless against all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever arising from:

SHULMAN HODGES & BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1             a.     any breach of the representations, warranties or covenants set out herein;

2             b.     failure by the Owner to comply with any laws relating to the Owner's right to sell the Equipment;

3             c.     hazardous materials associated with the Equipment or contamination resulting from any leakage, spills, or malfunction of the Equipment;

4             d.     deficiencies in the provision of documents required for the purpose of titling or registering any part of the Equipment by any purchaser thereof;

5             e.     any deficiency in compliance with applicable EPA rules or regulations;

6             f.     any negligence, unlawful act, or willful misconduct of the Owner in connection with this Contract; and

7             g.     any infringement of a patent, copyright, trademark, agreement or similar right of any third party caused by the offering for sale, advertising or sale of any part of the Equipment.

8

9

10          11.    No Buybacks, Unreserved Auction Sale:   The Owner shall not bid, directly or indirectly, nor allow any other person to bid on the Owner's behalf or for the Owner's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction. Owner acknowledges the auction is unreserved and the Auctioneer shall have no obligation or duty to withdraw the Equipment or any part thereof from the auction sale or to cancel the auction. The Equipment shall be sold to the highest bidder on the date of the auction.

11

12

13

14

15          12.    No Guarantee:   The Owner acknowledges that there is no guarantee whatsoever as to the gross proceeds to be realized from the sale of the Equipment at auction.

16

17          13.    Other:  The Owner shall:

            a.     provide, at no cost to the Auctioneer, zero (0) competent persons to assist in the preparation of the auction;

18             b.     comply with all legislation, regulations, or requirements of any authority of competent jurisdiction relating to the sale of the Equipment;

19

20             c.     be responsible for the payment of any tax or duty whatsoever that may legally be construed as being the responsibility of the Owner;

21             d.     provide the Auctioneer with the opportunity to review and comment on the Bankruptcy Court orders: (i) approving the sale of the Equipment pursuant to 11 USC § 363(f), and (ii) approving this Contract; and

22             e.     provide the Auctioneer with copies of such Bankruptcy Court orders.

23

24     A true and correct copy of the Auction Contract is attached to the Declaration of Alan Regotti ("Regotti Declaration") as **Exhibit 1**.

25

26     Attached as **Exhibit 2** to the Declaration of Zac Dalton ("Dalton Declaration") is a true and correct copy of the resume for the Auctioneer as well as Auctioneer's proof of liability insurance in the amount of $5,000,000. Immediately on approval of Court approval of the

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

20

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 20

1  Auction Motion, the Auctioneer will obtain a bond for this case in the amount of $250,000.  The

2  Auctioneer has advised Inland that the total value of all pending bankruptcy auctions in which

3  the Auctioneer is involved in this District does not exceed the bond it will obtain and liability

4  insurance coverage.

5          Inland believes that the terms for the Auction Contract are fair and reasonable and that

6  Inland should be authorized to employ the Auctioneer on the terms and conditions set forth in the

7  Auction Contract.  Inland is satisfied from the Dalton Declaration that the Auctioneer is a

8  disinterested person within the meaning of Bankruptcy Code Section 101(14).

9  **J.**      **Request for Authorization to Use the Auction Sale Proceeds**

10         Through this Auction Motion, Inland further requests the Court authorize the use of the

11  proceeds of the auction sale to make Court approved disbursements to the proposed Auctioneer

12  pursuant to the terms of the Auction Contract.

13  **K.**      **Approval of the Auction Motion Serves the Best Interests of the Estate and**

14          **Creditors**

15         Inland has made a business decision and believes that the sale of the Assets by the

16  proposed auction sale is the best available alternative for maximizing the value of the Assets for

17  the Estate and creditors.  The auction sale is the most efficient and cost effective way to liquidate

18  the Assets and will allow the Estate to receive the most value for the Assets as compared to

19  attempting to sell each item on a piecemeal basis.

20         Inland believes that the auction sale may generate gross proceeds of approximately

21  $126,500 based on the current business environment.  However, the auction will be unreserved

22  such that there are no minimum bids or reserve prices set on the items in the auction. Every item

23  is to be sold to the highest bidder.  Through the competitive bidding of a public auction sale, it is

24  anticipated that Inland will receive the best and highest value for the Assets and therefore, the

25  ultimate sale price of the Assets will be fair and reasonable.

26         Finally, approval of the auction sale must be resolved as quickly as possible so that the

27  Inland may coordinate the auction sale and afford time for the proposed Auctioneer to commence

28  advertising of the sale.

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1    Thus, based on good business reasons, approval of this Auction Motion would serve the

2    best interests of the Inland's Estate and its creditors.

3                        **III.    ARGUMENT**

4    **A.    The Court May Authorize the Sale When There is a Good Faith Purchaser**

5    Pursuant to Bankruptcy Code Section 541, upon the commencement of a case under

6    Chapter 11, an estate is created which includes all legal and equitable interest of the debtor in

7    property at the commencement of the case.  Inland, after notice and hearing, may sell property of

8    their Estates.  Bankruptcy Code Section 363(b).  The standards to establish are that there is a

9    sound business purpose for the sale, that the sale is in the best interests of the estate, i.e., the sale

10   is for a fair and reasonable price, that there is accurate and reasonable notice to creditors and that

11   the sale is made in good faith.  In re Wilde Horse Enterprises, Inc., 136 B.R. 830, 841 (Bankr.

12   C.D. Cal. 1991); In re Lionel Corp., 722 F.2d 1063, 1069 (2d Cir. 1983).  Business justification

13   would include the need to close a sale to one of very few serious bidders where an asset has been

14   extensively shopped and a delay could jeopardize the transaction.  See, e.g., In re Crowthers

15   McCall Pattner, Inc., 114 B.R. 877, 885 (Bankr. S.D.N.Y. 1990) (extreme difficulty finding a

16   buyer justified merger when buyer found).   The proposed auction sale of the Assets meets the

17   foregoing criteria.

18       1.    Sound Business Purpose

19   The Ninth Circuit in In re Walter, 83 B.R. 14 (Bankr. 9th Cir. 1988) has adopted a

20   flexible, case by case test to determine whether the business purpose for a proposed sale justifies

21   disposition of property of the estate under Section 363(b).  In Walter, the Ninth Circuit, adopting

22   the reasoning of the Fifth Circuit in In re Continental Air Lines, Inc., 780 F.2d 1223 (5th Cir.

23   1986), and the Second Circuit in In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983), set forth the

24   following standard to be applied under Bankruptcy Code Section 363(b).

25

26   Whether the proffered business justification is sufficient depends
     on the case.  As the Second Circuit held in Lionel, the bankruptcy
     judge should consider all salient factors pertaining to the

27   proceeding and, accordingly, act to further the diverse interests of
     the debtor, creditors and equity holders, alike.  He might, for

28   example, look to such relevant factors as the proportionate value of
     the assets to the estate as a whole, the amount of lapsed time since

**SHULMAN HODGES &
BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

22

**Page 22**

the filing, the likelihood that a plan of reorganization will be proposed and confirmed in the near future, the effect of the proposed disposition on future plans of reorganization, the proceeds to be obtained from the disposition vis-a-vis any appraisals of the property, which of the alternatives of use, sale or lease the proposal envisions and, most importantly perhaps, whether the asset is increasingly or decreasing in value. This list is not intended to be exclusive, but merely to provide guidance to the bankruptcy judge.

Walter, supra, at 19-20 [quoting In re Continental Air Lines, Inc., 780 F.2d 1223, 1226 (5th Cir. 1986)].

Here, the facts surrounding the sale of the Assets support Inland's business decision that the proposed auction is in the best interests of the Estate and its creditors. Inland has inadequate cash flow to fund operations, and does not have the luxury of the time needed to propose and solicit acceptance of a Chapter 11 plan prior to conducting an auction the sale of the Assets. Further, as Inland continues to accrue ordinary course of business administrative expense obligations, it is imperative that an auction sale of the Assets occur as soon as possible, to prevent the accrual of additional administrative claims that would be detrimental to general unsecured creditors.

Through the competitive bidding of a public auction sale, it is anticipated that Inland will receive the best and highest value for the Assets and therefore, the ultimate sale price of the Assets will be fair and reasonable.

Furthermore, approval of the auction sale must be resolved as quickly as possible so that Inland may coordinate the auction sale and afford time for the proposed Auctioneer to commence advertising of the sale. Thus, Inland needs immediate Court approval of the auction sale

Therefore, Inland respectfully submits that, if this Court applies the good business reason standard suggested by the Second Circuit in Lionel, the sale should be approved.

2.    The Auction Sale Serves the Best Interests of Estate and Creditors

Through the competitive bidding of a public auction sale, it is anticipated that Inland will receive the best and highest value for the Assets and therefore, the ultimate sale price of the Assets will be fair and reasonable.

As such, the proposed auction sale serves the best interests of the Estate and its creditors.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

3. <u>Accurate and Reasonable Notice</u>

It is expected that notice of this Auction Motion will satisfy the requirements for accurate and reasonable notice and will be appropriate under the circumstances.

In compliance with the Court order setting the hearing on the Auction Motion, Inland shall provide notice of the proposed sale of the Assets to the Office of the United States Trustee, all creditors of the Inland Estate and their counsel, and parties requesting notice. Notice of the Auction Motion will include a summary of the terms and conditions of the proposed sale, the time fixed for filing objections, and a general description of the Assets to be sold. Inland submits that the notice requirements have been satisfied, thereby allowing creditors and parties in interest an opportunity to object to the sale. Hence, no further notice should be necessary.

**B.    The Sale is Made In Good Faith**

The proposed sale has been brought in good faith and has been negotiated on an "arms length" basis.

The court, in <u>Wilde Horse Enterprises</u>, set forth the factors in considering whether a transaction is in good faith. The court stated:

> 'Good faith' encompasses fair value, and further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include collusion between the seller and buyer, or any attempt to take unfair advantage of other potential purchasers. . . . And, with respect to making such determinations, the court and creditors must be provided with sufficient information to allow them to take a position on the proposed sale. (citations omitted)

<u>Id</u>. at 842.

In the present case, the negotiation of the proposed auction sale was an arms-length transaction. As set forth in the Notice of the Auction Motion, the creditors will have been provided with sufficient notice of the sale. Accordingly, the sale is in good faith and should be approved. Inland shall request such a finding pursuant to Bankruptcy Code Section 363(m) at the hearing on this Auction Motion.

**SHULMAN HODGES & BASTIAN LLP**
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

**C.**     **Sale of the Assets Free and Clear of Liens and Encumbrances Should Be Permitted**

Bankruptcy Code Section 363(f) allows a Chapter 11 debtor to sell property of the bankruptcy estate "free and clear of any interest in such property of an entity," if any one of the following five conditions is met:

> (1)     applicable non-bankruptcy law permits a sale of such property free and clear of such interest;
>
> (2)     such entity consents;
>
> (3)     such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;
>
> (4)     such interest is in bona fide dispute; or
>
> (5)     such entity could be compelled, in a legal or equitable proceeding, to accept money satisfaction of such interest.

Bankruptcy Code Section 363(f).

Section 363(f) is written in the disjunctive and thus only one of the enumerated conditions needs to be satisfied for Court approval to be appropriate.

1.     Section 363(f)(2)- Consent

The sale of the Assets is proper pursuant to Section 363(f)(2). Inland believes that secured creditors will have no objection to the sale under the terms set forth herein.  As to Federal and Berkley, Inland has communicated with these lienholders who have advised that they will consent to the sale.  Inland also believes that the Riverside Treasurer and Tax Collector will consent to the sale. As such, the Assets will be sold free and clear of all liens and encumbrances with the consent of the lienholders.

2.     Section 363(f)(4) – Bona Fide Dispute

The Riverside County Treasurer and Tax Collector ("Tax Collector") has filed a proof of claim against Inland asserting a secured claim of $63,639.66, a true and correct copy of which is attached to the Regotti Declaration as **Exhibit 3**.  The amount and the secured characterization of the claim are the subject of bona fide disputes.  As no documents were attached to the proof of claim providing an accounting of the alleged amount owed to the Tax Collector, Inland has been unable to evaluate the validity of the claim.  The amount of the lien may be disputed.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1    In addition, records of the Riverside County Recorder indicate that the Tax Collector

2  filed a tax lien on November 6, 2013 (document number : 2013-0527072), a true and correct

3  copy of which is attached as **Exhibit 4** to the Regotti Declaration. The recording of the lien

4  occurred after the commencement of Inland's bankruptcy case and is in violation of the

5  automatic stay under Bankruptcy Code Section 362.  Inland asserts that under applicable federal

6  bankruptcy law, the lien is invalid as any action taken in violation of the automatic stay is void as

7  a matter of law.  See, In re Schwartz, 951 Fed.2d, 596 (9th Cir. 1992).

8    Inland asserts there are causes of action under Bankruptcy Code Section 549 to have the

9  Tax Collector lien set aside because it was recorded after the Petition Date and as such, the lien

10 was not authorized by the Bankruptcy Code or order of the Bankruptcy Court.

11   Any claim that holders of the disputed liens and encumbrances may have against the

12 Estate related to the Property, are anticipated to be the subject of bona fide disputes and therefore

13 the sale may go forward free and clear of such claims pursuant to Section 363(f)(4).  A bona fide

14 dispute has been defined by In re Atwood, 124 B.R. 402 (Bankr. S.D. Ga. 1991) as a "genuine

15 issue of material fact that bears upon the debtor's liability, or meritorious contention as to the

16 application of law to undisputed facts."  Id. at 407.  In In re Milford Group, Inc., 150 B.R. 904

17 (Bankr. M.D. Pa. 1992), the court stated it need not resolve a bona fide dispute, but must

18 determine whether the issues presented are genuine as to the existence of a bona fide dispute.  In

19 doing so, the Milford Court found that the debtor had met its burden to establish cause for the

20 Court to allow for the sale of the property, free and clear of liens.

21   The policy behind allowing assets to be sold free and clear of disputed interests provides

22 that the disputes do not bog down the swift and orderly liquidation of bankruptcy estate assets for

23 the highest possible value.  In this case, delaying the auction sale pending resolution of secured

24 claim disputes would be detrimental.  If every sale were subject to resolution of disputes that

25 were in existence, expense and time associated with litigation would significantly impact values

26 that could be obtained for the benefit of creditors.  Resolution of the issues with regard to the

27 claims of the holders of disputed liens and encumbrances may likely take substantial time, effort

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

1   and expense by the parties.  That process should not hinder, delay or in any way inhibit Inland's

2   efforts to maximize the value of the sale of its Assets.

3       The proposed sale of Inland's Assets conforms to the requirements of Section 363(f)(4)

4   in that Inland has established the existence of bona fide disputes with the holders of disputed

5   Liens and Encumbrances.  Thus, approval for the sale of the free and clear of Liens and

6   Encumbrances in the manner provided herein is appropriate.

7       Inland desires to sell the Assets quickly in order stop administrative costs associated with

8   the Assets and delays that could result from having to first resolve any disputes related to secured

9   claims may negatively impact the benefits of the sale.  As such, pursuant to Bankruptcy Code

10  Sections 363(b)(1) and (f), Inland seeks authority to sell all of the Assets free and clear of any

11  and all Liens and Encumbrances, with such Liens and Encumbrances not released, resolved or

12  satisfied through the auction sale to attach to the auction sale proceeds in the same validity and

13  priority as prior to the Petition Date pending agreement with the lienholder creditor or further

14  order of the Court.

15  **D.    The Auction Sale Does Not Contravene Policy**

16      As early as 1981, a court held that:

17          As to whether the sale by a trustee of all of the debtor's assets must
            take place in the context of a confirmed reorganization plan, the
18          case law again is clear that there is nothing objectionable about a
            sale of all the assets outside of a Chapter 11 plan.
19

20  In re WHET, Inc., 12 B.R. 743, 750 (Bankr. D. Mass. 1981).

21      Not to the contrary, the Fifth Circuit decision in In re Braniff Airways, Inc., 700 F.2d 935

22  (5th Cir. 1983), disapproved an asset sale because the transaction at issue involved much more

23  than a sale of property in that the documents significantly limited the debtor's reorganization

24  options.  Id. At 939.

25      Under the circumstances of Inland's business and financial situation, Inland believes the

26  only current option available is the orderly auction sale of the Assets.  In essence, based on good

27  business reasons, including the current financial market and the economics of Inland's financial

28  situation, and the benefits to be achieved through the sale (cash payments to the Estate and

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 27

1 | reduction of administrative costs), it is in the best interest of the creditors and the Estate that this

2 | Auction Motion be approved.

3 | Accordingly, the sale does not conflict with underlying bankruptcy policy. <u>See</u>, <u>In re</u>

4 | <u>Brethren Care of South Bend, Inc.</u>, 98 B.R. 927, 934 (Bankr. N.D. Ind. 1989) (certainty of future

5 | for tenants was good business reason and only feasible plan was liquidation, so 363 sale

6 | approved despite pending plan of reorganization).

7 | **E.**    **Inland May Reserve the Estate's Right for Reimbursement of Costs Associated**

8 | **With the Preservation and Disposal of Collateral**

9 | Bankruptcy Code Section 506(c) provides that:

10 |
11 | > [t]he trustee may recover from property securing and allowed
> secured claim the reasonable, necessary costs and expenses of
> preserving, or disposing of, such property to the extent of any
> benefit to the holder of such claim.
12 |

13 | In order to facilitate the sale as quickly as possible, Inland does not desire to complicate

14 | the liquidation of the Assets.   Thus, at this time Inland specifically reserves any and all rights the

15 | Estate may have under Bankruptcy Code Section 506(c) to surcharge the collateral of any

16 | lienholder for the costs the Estate may have incurred in the maintenance of their respective

17 | collateral as well as with the preservation and disposal of their alleged collateral.

18 | **F.**    **The Court has Authority to Waive the Fourteen-Day Stay of Sale**

19 | Federal Rule of Bankruptcy Procedure 6004(h) provides that "[a]n order authorizing the

20 | use, sale or lease of property other than cash collateral is stayed until the expiration of 14 days

21 | after entry of the order, unless the Court orders otherwise."

22 | Federal Rule of Bankruptcy Procedure 6006(d) provides that  "[a]n order authorizing the

23 | trustee to assign an executory contract or unexpired lease under §365(f) is stayed until the

24 | expiration of 14 days after entry of the order, unless the court orders otherwise."

25 | Inland desires to conduct and close on the proposed auction sale as soon as practicable

26 | after entry of an order approving the Auction Motion.  Accordingly, Inland requests that the

27 | Court in the discretion provided it under Federal Rules of Bankruptcy Procedure 6004(h) and

28 |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

28

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 28

1    6006(d), order that the fourteen-day stay of the order granting this Auction Motion shall not

2    apply.

3    ## IV.    CONCLUSION

4    **WHEREFORE,** based upon the foregoing, Inland respectfully submits that good cause

5    exists for granting the Auction Motion and requests the Court enter an order as follows:

6    1.    Approving the auction sales of the Assets, to the highest bidder, with no minimum

7    bid requirements and free and clear of all liens and encumbrances pursuant to Bankruptcy Code

8    Section 365 (b) and (f), with such liens and encumbrances to attach to the proceeds of the auction

9    sale in the same validity and priority as prior to the Petition Date pending agreement with the

10    lienholder or further order of the Court.

11    2.    Authorizing Inland to include any additional items in the current auction that

12    Inland determines prior to the auction date are items no longer be necessary for Inland's business

13    operations.

14    3.    Approving and authorizing Inland to enter into the Auction Contract for the

15    employment of Ritchie Bros. Auctioneers (America) Inc. as Inland's auctioneer to coordinate the

16    current auction sale and authorizing payment of the Auctioneer's compensation pursuant to the

17    terms of the Auction Contract.

18    4.    If applicable, as to any Assets subject to a lease interest, provided that there is

19    equity for the Estate and the lessor consents to the sale, authorizing Inland to sell such leased

20    Asset free and clear of the lease interest.

21    5.    Reserving any and all right the Estate may have under Bankruptcy Code Section

22    506(c) to surcharge the collateral of any possible lienholders, for the costs the Estate may have

23    incurred in the maintenance of their respective collateral as well as with the preservation and

24    liquidation of the lienholder's collateral.

25    6.    Directing that the fourteen day stay of the order approving the Auction Motion as

26    provided by Federal Rules of Bankruptcy Procedure 6004(h) and 6006(d), or any other

27    applicable rules, shall not apply and that absent judicial imposition of a stay of the Court order

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

29

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 29

1   approving the Auction Motion pending appeal, Inland may immediately consummate the actions

2   that are approved by such Court order.

3          7.      Once Inland determines its remaining machinery and equipment ("Remaining

4   Equipment") not included in the current auction sale is no longer necessary for its business

5   operations, authorizing Inland to conduct a further auction sale of the Remaining Equipment

6   ("Further Auction"), with such Further Auction to be conducted at a later date to be determined

7   but under the same terms and conditions of the current auction sale including the employment

8   Ritchie Bros. Auctioneers (America) Inc. as Inland's auctioneer and entering into an auction

9   contract in the same form the Auction Contract.

10         8.      For such other and further relief as the Court deems just and proper under the

11  circumstances of this case.

12                          Respectfully submitted,

13  Dated:  November 17, 2014        **SHULMAN HODGES & BASTIAN LLP**

14                          /s/ James C. Bastian, Jr.

15                          ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                            James C. Bastian, Jr.
16                          Attorneys for ASR Constructors, Inc., a
                            California corporation, Another Meridian Company, LLC,
17                          a California limited liability company, and
                            Inland Machinery, Inc., a California corporation,
18                          the Debtors and Debtors in Possession

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

30

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 30

# DECLARATION

# DECLARATION OF ALAN REGOTTI

I, Alan Regotti, declare:

1.      I am the President of ASR Constructors, Inc. a California corporation ("ASR"), the Managing Member of Another Meridian Company, LLC a California limited liability company ("Meridian"), and the Secretary of Inland Machinery, Inc. a California corporation ("Inland"), each a debtor and debtor in possession (collectively the "Debtors"), and am one of the persons responsible for the administration of the Debtors.  I have personal knowledge of the facts set forth herein and could, if called as a witness, competently testify thereto.  I am also personally familiar with, and am custodian of, the records of the Debtors as they pertain to the financial records set forth herein.  The records of the Debtors are made by employees or agents of the Debtors who report to me and who have a business duty to enter the records of the Debtors accurately and at or near the time of the event which they record.

2.      I make this Declaration in support of the Motion for an Order Authorizing the Debtor to: (1) Conduct an Auction Sale of Assets of the Estate (Machinery and Equipment) Free and Clear of Liens Pursuant to Bankruptcy Code Section 363(b) and (f); (2) Employ Auctioneer and Pay Compensation to the Auctioneer; (3), And Granting Related Relief ("Auction Motion") filed by Inland.  All capitalized terms not otherwise defined herein shall have the meaning set forth in the Auction Motion.

3.      The Debtors filed a Motion for Order Authorizing Use of Cash Collateral ("Cash Collateral Motion") (docket 306) seeking authority to use some of Federal's cash collateral in the form of the proceeds from the sale of the Meridian's real properties and Inland's assets to pay overhead expenses of ASR to allow ASR to complete its remaining projects and preserve the remaining assets of all the Debtors.  An opposition to the Cash Collateral Motion was filed by Federal.  The Debtors, Federal and Berkley resolved disputes related to the use of cash collateral and the Cash Collateral Motion and entered into that certain Stipulation Between the Debtors, Federal Insurance Company and Berkley Regional Insurance Resolving Debtors' Motion for Use of Cash Collateral which was filed with the Court on October 28, 2014 (docket 375) ("Cash

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

31

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 32

Collateral Stipulation"). The Cash Collateral Stipulation was approved by Court order entered on October 31, 2014 (docket 376).

    4.    The Debtors filed a Motion for Order Authorizing Surcharge of Collateral Pursuant to 11 U.S.C. §506(c) ("Surcharge Motion") (docket 308) seeking a $420,000 surcharge of Federal's first priority lien against Federal's collateral to cover the costs and expenses incurred by the Debtors' professionals and for expenses incurred by the Debtors to preserve and realize value in Federal's collateral. An opposition to the Surcharge Motion was filed by Federal. The Debtors and Federal resolved disputes related to Surcharge Motion and entered into that certain Stipulation Between the Debtors and Federal Insurance Company Resolving Debtors' Motion for Order Authorizing Surcharge of Collateral Pursuant to 11 U.S.C. 506(c) which was filed with the Court on November 6, 2014 (docket 379) ("Surcharge Stipulation"). The Surcharge Stipulation was approved by Court order entered on November 10, 2014 (docket 382).

    5.    Inland has been investigating alternatives for maximizing the value of its assets for the benefit of all of its creditors and other parties in interest. Inland has decided that it is in the best interest of the Estate and creditors to sell by auction sale certain of its assets generally described as rental machinery and equipment (collectively the "Assets") no longer needed in the operation of the Inland's machinery and equipment rental business. The following is a list of the Assets to be sold at auction:

| Item # | Description | Estimated Value |
| --- | --- | --- |
| 1069 | 200 International Truck Rollback | $15,000 |
| 1089 | 1995 Utility High Boy | $12,000 |
| 1102 | 1999 Ranco End Dump | $15,000 |
| 1112 | 2009 Aztez Trailer | $2,000 |
| 1132 | 2003 Freightliner Water Truck | $7,000 |
| 3019 | 2007 Komatsu Backhoe | $20,000 |
|  | John Deere Skiploader | $10,000 |
|  | JLG Forklift | $13,000 |

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

| Item # | Description | Estimated Value |
|---|---|---|
| | Skyjack Manlift | $4,000 |
| | Thomas Skidsteer | $4,000 |
| | Trench Shield 4 x 20 | $2,000 |
| | Quantity backhoe buckets | $2,000 |
| | Quantity skidsteer attachments | $3,000 |
| | Quantity scaffold jacks and planks | $2,500 |
| | Masonry saw | $500 |
| | Masonry mixers (2) | $1,500 |
| | Miscellaneous industrial items | $1,500 |
| | Trench plates (6) | $6,500 |
| | Pallets of miscellaneous items | $5,000 |
| | Total | $126,500 |

6.    As Inland is winding down its affairs, Inland may determine there will be additional items to be included in the auction sale.  As such, Inland requests authority to include any additional items in the current auction that Inland determines prior to the auction date are items no longer be necessary for Inland's business operations.

7.    The Assets to be sold do not include all of Inland's machinery and equipment as some of it is still being utilized by ASR in the completion of pending projects.  Once pending ASR projects are completed (estimated by January 2015), Inland will need to sell its remaining machinery and equipment not included in the current auction sale.  As such, Inland requests authority to conduct a further auction sale of its machinery and equipment at a later date under the same terms and conditions of this current auction sale once Inland determines the remaining equipment is no longer necessary for its business operations.  Inland has contacted or has been contacted by parties who have expressed an interest in the purchase of Inland's assets.  Several interested parties have met with Inland's management and/or performed due diligence, but most offered only bids that were too low, or no bid at all, or subject to significant contingencies.  As such, in light of the current economic environment and Inland's financial condition, Inland

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

33

1    believes the only option available is the orderly auction sale of the Assets of related to its

2    equipment and machinery rental business.

3           8.      Inland is no longer using the Assets to be sold.

4           9.      Inland received an offer from Ritchie Bros. Auctioneers (America) Inc. to sell the

5    Assets at a public auction.  Attached hereto as **Exhibit 1** is a true and correct copy of the form of

6    the Auction Contract.

7          10.     Inland is satisfied from the Dalton Declaration that the Auctioneer is a

8    disinterested person within the meaning of Bankruptcy Code Section 101(14).

9          11.     Inland chose Ritchie Bros. Auctioneers (America) Inc. to be its auctioneer

10   because it has worked with them before, the auctions conducted by Auctioneer have been

11   successful, and Auctioneer's proposal for compensation is competitive with other auctioneers.

12         12.     The Riverside County Treasurer and Tax Collector ("Tax Collector") has filed a

13   proof of claim against Inland asserting a secured claim of $63,639.66, a true and correct copy of

14   which is attached hereto as **Exhibit 3**.  The amount and the secured characterization of the claim

15   are the subject of bona fide disputes. As no documents were attached to the proof of claim

16   providing an accounting of the alleged amount owed to the Tax Collector, Inland has been

17   unable to evaluate the validity of the claim.  The amount of the lien may be disputed.

18         13.     In addition, records of the Riverside County Recorder indicate that the Tax

19   Collector filed a tax lien on November 6, 2013 (document number 2013-0527072), a true and

20   correct copy of which is attached hereto as **Exhibit 4**.  The recording of the lien occurred after

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

34

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 35

1  the commencement of Inland's bankruptcy case. Inland asserts that under applicable federal

2  bankruptcy law, the lien is invalid as any action taken in violation of the automatic stay is void as

3  a matter of law.  Inland asserts there are causes of action under Bankruptcy Code Section 549 to

4  have the Tax Collector lien set aside because it was recorded after the Petition Date and as such,

5  the lien was not authorized by the Bankruptcy Code or order of the Bankruptcy Court.  For the

6  reasons set forth in the Auction Motion and this Declaration, I respectfully request that the Court

7  grant the Auction Motion so that Inland does not lose this favorable business opportunity to

8  generate funds for the Estate.

9          I declare under penalty of perjury under the laws of the United States of America that the

10  foregoing is true and correct.

11          Executed on November 14, 2014 at Riverside, California.

12

13  Alan Regotti

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

35

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 36

# DECLARATION

## DECLARATION OF ZAC DALTON

I, Zac Dalton, declare and state as follows:

1.      The matters stated herein are true and correct and within my personal knowledge. If called as a witness, I could and would competently testify thereto. I am Regional Sales Manager, Insolvency & Restructuring for Ritchie Bros. Auctioneers (America) Inc. ("Firm") located at 4000 Pine Lake Drive, Lincoln, NE 68516.

2.      I make this declaration in support of the Motion for an Order Authorizing the Debtor to: (1) Conduct an Auction Sale of Assets of the Estate (Machinery and Equipment) Free and Clear of Liens Pursuant to Bankruptcy Code Section 363(b) and (f); (2) Employ Auctioneer and Pay Compensation to the Auctioneer; and (3) Granting Related Relief ("Auction Motion") ("Auction Motion") filed by Inland Machinery, Inc., a California corporation ("Inland"), one of three affiliated companies which include ASR Constructors, Inc. a California corporation ("ASR"), and Another Meridian Company, LLC, a California limited liability company ("Meridian"), each a debtor and debtor in possession (collectively the "Debtors").    All capitalized terms not otherwise defined herein shall have the meaning set forth in the Auction Motion.

3.      The Firm has had extensive experience in the matters for which it is to be engaged and is well qualified to conduct a public auction of the kind proposed by Inland in the foregoing Auction Motion. Attached hereto as **Exhibit 2** is the Firm's resume.

4.      The Firm will extensively market the Assets for sale, including but not limited to, direct mailing of approximately 80,000 brochures and emailing of approximately 90,000 brochures, both locally and internationally.   The advertising will cover approximately thirty countries.   The Firm's cost for marketing is covered in the 9% commission to be paid to the Firm.

5.      The Firm will advertise in local and industry-specific print and online publications, and use search engine optimization to reach the widest audience of potential buyers. The Firm will also conduct direct mail and e-mail campaigns to target select individuals from its database of approximately 620,000 customers in approximately 190 countries.

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

36

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 38

1    6.    The Firm will upload details of the Assets to the Firm's web site along with any

2    photos taken during the inspection process that potential buyers can access prior to the auction.

3    When Inland transfers the Assets to the auction site, the Firm will capture detailed equipment

4    information and take additional high resolution photographs of each item which will be posted to

5    the website.  On the day of the auction, buyers can bid on the items either in person or online.

6    7.    The Firm conducts hundreds of unreserved public auctions around the world each

7    year, selling billions of dollars of used and unused equipment.  The Firm is committed to

8    conducting strictly unreserved public auctions and uses extensive marketing campaigns to attract

9    serious buyers from around the world.  Most of the buyers are end-users with specific equipment

10    needs.  A typical auction attracts many hundreds of bidders to the auction site, with hundreds

11    more competing online in real time at rbauction.com. As a result of this global competitive

12    bidding environment, it is my opinion that equipment sells for its true global market value on

13    auction day.

14    8.    Over the past fifty years, the Firm has proven that unreserved public auctions

15    offer the most effective and efficient means of creating maximum value for sellers. Unreserved

16    auction events offer the benefit of certain sale and payment dates for sellers and also create a

17    sense of anticipation and urgency among equipment buyers.

18    9.    For these reasons, it is my opinion that the auction is likely to yield the highest

19    and best offers for the Assets because the Firm is the largest auctioneer of heavy equipment and

20    trucks, the Firm's contacts and client base is extremely large, and the auction will include not

21    only the Assets of Inland but assets of other unrelated companies which will help attract

22    additional buyers. The Firm has conducted auctions in the past for Inland and they have been

23    very successful.

24    10.    Although Inland believes that the auction sale may generate gross proceeds of

25    approximately $126,500, the auction will be unreserved such that there are no minimum bids or

26    reserve prices set on the items in the auction. Every item is to be sold to the highest bidder.

27    11.    Included with **Exhibit 2** is a copy of the Firm's proof of liability insurance in the

28    amount of $5,000,000.  Immediately upon Court approval of this Auction Motion, the Firm will

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

37

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

ZD

Page 39

1  obtain a bond for this case in the amount of $250,000. The Firm has advised Inland that the total

2  value of all pending bankruptcy auctions in which the Firm is involved in this District does not

3  exceed the bond and liability insurance coverage.

4       12.    I have read Auction Motion and the Firm agrees to and approves all of the terms

5  and conditions thereof.

6       13.    Other than assisting the Debtor with prior auction sales, to the best of the Firm's

7  knowledge after full investigation, neither the Firm, nor any of the professionals comprising or

8  employed by it, have any connection with the Debtors, their creditors or any other party in

9  interest, their respective attorneys or other professionals, the United States Trustee, or any person

10  employed by the Office of the United States Trustee.

11       14.    To the best of the Firm's knowledge after full investigation, none of the

12  professionals comprising or employed by the Firm are related to any judge of the United States

13  Bankruptcy Court for the Central District of California, or to the United States Trustee or any

14  employee of the United States Trustee.

15       15.    To the best of my knowledge after full investigation, the Firm is both disinterested

16  as that term is defined in Bankruptcy Code Section 101(14) and represents no interest which

17  would be adverse to the Debtors, their Estates or their creditors or any party in interest in this

18  proceeding.

19       16.    The Firm has no pre-petition claim against the ASR, Meridian and/or Inland or

20  their respective bankruptcy estates.

21       17.    The Firm has received no retainer for the services to be performed herein.

22  ////

23  ////

24  ////

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

38

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

Page 40

1    18.    The Firm and I are familiar with the requirements of the Office of the United

2  States Trustee related to employment of auctioneers which includes requirements relative to the

3  filing of a report by the auctioneer within thirty days after the auction sale, and the procedures

4  for compensation of auctioneers, and we agree to comply therewith.

5    I declare under penalty of perjury under the laws of the United States of America that the

6  foregoing is true and correct.

7    Executed on November 17, 2014 at Lincoln, Nebraska.

8

9    _____
      Zac Dalton

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

SHULMAN HODGES &
BASTIAN LLP
8105 Irvine Center Drive
Suite 600
Irvine, CA 92618

39

Auction #3 Motion - Inland Machinery Inc v1
4734-001\50

# Exhibit 1
# Auction Contract



## CONTRACT TO AUCTION
### (CHAPTER 11 – STRAIGHT COMMISSION)

**DATED** this _31ˢᵗ_-day of October, 2014.

**BETWEEN**:

> **RITCHIE BROS. AUCTIONEERS (AMERICA) INC.**, having its head office at 4000
> Pine Lake Road in the City of Lincoln, in the State of Nebraska, 685156
> Web Site: www.rbauction.com
>
> (the **"Auctioneer"**)

OF THE FIRST PART

**AND**:

> **INLAND MACHINERY, INC.,** in Chapter 11 of the United States Bankruptcy Code,
> DEBTOR CASE # 6:13-bk-27532-MH, having a place of business at 33891 Mission
> Trail in the City of Wildomar , in the State of California  92595 .
>
> Telephone No.          951- 245.6611
> Fax No.                951-245.6633
> E-Mail Address         aregotti@asrconstructors.com
>
> (the **"Owner"**)

OF THE SECOND PART

## TERMS AND CONDITIONS OF THIS CONTRACT

### Agreement

The above parties recognize that the Owner is operating under Chapter 11 of the US Bankruptcy
Code and that this Contract is subject to the approval of the United States Bankruptcy Court in
the Central District of California (the "Bankruptcy Court") having jurisdiction over such
proceedings.  Notwithstanding any other provision herein, this Contract shall be null and void,
without penalty to either party, if Bankruptcy Court approval of this Contract is not received on
or before December 11, 2014.

# Exhibit 1

For valuable consideration, the above parties enter into this Contract (the "Contract") which sets out their respective rights, obligations and undertakings regarding the sale by unreserved public auction of all those items described on Schedule "A" attached hereto (the "Equipment").

## SECTION 1: AUCTIONEER'S OBLIGATIONS AND RESPONSIBILITIES

**1.01    Sale Date** – The Auctioneer shall, as agent of the Owner, offer the Equipment, together with any additional items delivered by the Owner to the auction site for sale, in whole or in party, pursuant to the Bankruptcy Court order to be granted, at unreserved public auction on or about the_-11th, day of December  , 2014, at the City of Perris, in the State of California.

**1.02    Payment** – The Auctioneer shall make payment to the Owner within twenty-one (21) days after the auction, the amount due and owing to the Owner from monies collected from the sale of the Equipment after making all deductions permitted under this Contract.

**1.03    Commission** – The Auctioneer shall be entitled, at the time of the auction, to a commission of nine percent (9.00%) based on the gross sale price of the Equipment or any part thereof.

**1.04    Other** – The Auctioneer shall:

(a)     allow the Owner access to records concerning the sale of the Equipment at the auction excluding the names or contact information of the buyers thereof;

(b)     supervise the preparation and organization of the auction;

(c)     provide auctioneers and accountants required for an auction of this type;

(d)     ensure on-site food catering services are available to those in attendance at the auction;

(e)     provide listing catalogs of the lots offered for sale to potential buyers at the auction; and.

(f)     collect and remit State and local sales tax arising upon the sale of the Equipment at the auction.

**1.05    Sale Site**– The Auctioneer shall provide, at no cost to Owner, a suitable site for conduct of the auction.

## SECTION 2: OWNER'S REPRESENTATIONS AND WARRANTIES:

**2.01    Title and Condition**

**The Owner represents and warrants that:**

# Exhibit 1

Initials

(a)    the Owner is operating under the provisions of Chapter 11 of the United States Bankruptcy Code, and that this Contract is subject to the receipt by the parties of a Bankruptcy Court order to be obtained on or before December 11, 2014 or prior to next auction date, authorizing the sale of the Equipment pursuant to 11 USC § 363(f) free and clear of any and all registered and unregistered liens, security interests, tax or duty obligations or other encumbrances or contrary claims whatsoever;

(b)    the Owner has complied with all laws, requirements and notices necessary to allow the sale of the Equipment;

(c)    the description of the Equipment is accurately set forth on Schedule "A" attached and in the case of motor vehicle Equipment, such Equipment has never been re-built, salvaged or glidered except as disclosed to the Auctioneer;

(d)    the offering for sale, advertising or selling of the Equipment will not contravene or infringe upon any patent, copyright, trademark, agreement or similar right of any third party;

(e)    all odometer and hour meters on the Equipment reflect actual mileage or usage unless otherwise disclosed to the Auctioneer on Schedule "A"; and

(e)    the Owner and its signatories are duly authorized to enter into this Contract.

## SECTION 3: OWNER'S OBLIGATIONS AND RESPONSIBILITIES:

**3.01**    **Refurbishing** – The Owner shall:

(a)    paint, clean, and refurbish, prior to the auction, the Equipment to a standard acceptable to the Auctioneer. Should the Auctioneer organize and pay for painting, cleaning, or refurbishing any part of the Equipment, the Auctioneer shall be reimbursed for these costs plus ten percent (10%) provided that the total cost shall not exceed Eleven Thousand five hundred dollars ($11,500.00) without authorization from Owner, and

(b)    reimburse the Auctioneer for the cost of fuel and batteries as the Auctioneer deems necessary for demonstration and sale of the Equipment.

**3.02**    **Delivery** – The Owner shall deliver the Equipment, at Owner's cost, to the auction site on or before the 1st day of December, 2014:

(a)    in good operating condition, free of material defects except as disclosed to the Auctioneer, with adequate fuel and batteries and starting at the key;

(b)    free of hazardous materials other than normal operating fuels, oils, and lubricants;

(c)    in a condition equivalent to or better than its condition when viewed by the Auctioneer's representative on or about the 14th day of February, 2014; and

(d)    in compliance with all applicable EPA rules and regulations;

US Ch11 Straight R01_11       **Exhibit 1**       Initials 

together with all documents evidencing the Owner's title, and/or necessary to transfer title, to the Equipment, properly endorsed;

The Owner hereby assigns Power of Attorney to the Auctioneer for the limited purpose of executing on the Owner's behalf, all documents required to transfer title to, and permit registration or ownership of, any part of the Equipment by the purchaser thereof.

**3.03**   **Searching and Title Documents** – The Owner shall:

(a)   conduct searches or use other means available, as deemed necessary by the Owner for the disclosure of liens and encumbrances, and include all such creditors in Bankruptcy Court notices seeking authority under 11 USC § 363 to sell the Equipment; in no case shall the Owner have a duty to conduct such searches, nor be responsible for the result thereof; and

(b)   pay a document administration fee of $65 per unit for each item of Equipment requiring title or registration documents.

**3.04**   **Risk of Loss, Insurance** – The Owner shall:

(a)   be responsible for loss or damage to the Equipment, other than loss or damage arising as a result of the negligence of the Auctioneer, its agents or employees, until the earliest of:

   i.   the removal of the Equipment from the auction site by the purchaser; or

   ii.   receipt by Owner of all proceeds from the sale of the Equipment; and

(b)   insure the Equipment, with the Auctioneer as additional insured, to its fair market value against all perils so that in the event of damage to, or destruction of, the Equipment or any part thereof, all insurance proceeds shall be credited to the gross proceeds of the auction and payment made to the Auctioneer forthwith for all deductions permitted by this Contract; and

(c)   upon request, provide Auctioneer with a copy of the insurance certificate, or other documentation evidencing the Auctioneer as an additional insured, to the satisfaction of the Auctioneer.

**3.05**   **Indemnity** – The Owner shall defend, indemnify and save the Auctioneer, its parents, subsidiaries and affiliates, and each of their officers, directors, shareholders, employees, and agents harmless against all claims, demands, suits, actions, causes of action, damages, costs or charges whatsoever arising from:

(a)   any breach of the representations, warranties or covenants set out herein;

(b)   failure by the Owner to comply with any laws relating to the Owner's right to sell the Equipment;

(c)   hazardous materials associated with the Equipment or contamination resulting from any leakage, spills, or malfunction of the Equipment;

US Ch11 Straight R01_11                **Exhibit 1**              Initials 

(d)    deficiencies in the provision of documents required for the purpose of titling or registering any part of the Equipment by any purchaser thereof;

(e)    any deficiency in compliance with applicable EPA rules or regulations;

(f)    any negligence, unlawful act, or willful misconduct of the Owner in connection with this Contract; and

(g)    any infringement of a patent, copyright, trademark, agreement or similar right of any third party caused by the offering for sale, advertising or sale of any part of the Equipment.

**3.06**    <u>**No Buybacks, Unreserved Auction Sale**</u> – The Owner shall not bid, directly or indirectly, nor allow any other person to bid on the Owner's behalf or for the Owner's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction;

Owner acknowledges the auction is unreserved and the Auctioneer shall have no obligation or duty to withdraw the Equipment or any part thereof from the auction sale or to cancel the auction.  The Equipment shall be sold to the highest bidder on the date of the auction.

**3.07**    <u>**No Guarantee**</u> – The Owner acknowledges that there is no guarantee whatsoever as to the gross proceeds to be realized from the sale of the Equipment at auction.

**3.08**    <u>**Specific Performance**</u> – The Owner shall not withdraw the Equipment or any part thereof from the auction sale.  If the Owner is in breach of this provision, then in addition to any other remedies set out in this Contract, the parties hereto agree:

(a)    the damages to the Auctioneer's business reputation and customer relations are not readily ascertainable;

(b)    available remedies at law are not adequate in the event of breach; and

(c)    the Auctioneer may not be made whole solely by monetary recompense;

therefore, the Auctioneer may elect, at its sole option, to apply for an order for specific performance of this Contract and the Owner hereby waives all rights to object to such application.

**3.09**    <u>**Other**</u> – The Owner shall:

(a)    provide, at no cost to the Auctioneer, zero (0) competent persons to assist in the preparation of the auction;

(b)    comply with all legislation, regulations, or requirements of any authority of competent jurisdiction relating to the sale of the Equipment;

(c)    be responsible for the payment of any tax or duty whatsoever that may legally be construed as being the responsibility of the Owner;

US Ch11 Straight R01_11

# Exhibit 1

Initials  _____  _____

(d)     provide the Auctioneer with the opportunity to review and comment on the Bankruptcy Court orders: (i) approving the sale of the Equipment pursuant to 11 USC § 363(f), and (ii) approving this Contract; and

(e)     provide the Auctioneer with copies of such Bankruptcy Court orders.

## SECTION 4: MUTUAL AGREEMENTS

**4.01**    **Timeliness** – Time is of the essence of this Contract.

**4.02**    **Waiver** – A waiver by either party of any breach of any of the provisions herein shall be limited to such particular instance and shall not operate as a waiver of, or be deemed to waive, any other or future breaches of the same or any other provisions hereof.

**4.03**    **Legal Costs** – Should either party be required to participate in any action or proceeding in respect of this Contract, the prevailing party shall be entitled to recover all costs, including attorney's fees, incurred as a result thereof.

**4.04**    **Prohibition of Pre-Sale** – Neither the Auctioneer nor the Owner shall sell or offer for sale any part of the Equipment prior to the auction without the written permission of the other.

**4.05**    **Default by Owner**:

If:

(a)     The Owner withdraws or fails to timely deliver the Equipment or any part thereof or any documents required hereunder, or if the auction sale does not occur as a result of the actions or inaction of the Owner; or

(b)     The Owner, directly or indirectly, bids or permits another to bid on Owner's behalf or for the Owner's benefit, by agency or otherwise, on the Equipment or any part thereof at the auction; or

(c)     The Owner's representations and warranties set out in Section 2 hereof are not true, complete and correct in all respects;

then:

(d)     commissions shall be payable to the Auctioneer upon demand, based upon the fair market value of any withdrawn or undelivered parts of the Equipment as if they had been sold;

(e)     any advances made by Auctioneer to the Owner together with accrued interest shall become due and repayable immediately; and

(f)     The Owner will upon demand, reimburse the Auctioneer for all out-of-pocket expenses incurred in preparation for the auction.

US Ch11 Straight R01_11        **Exhibit 1**        Initials 

In the event the Owner is in violation of subparagraph 4.05 (b), in addition to any other rights or remedies the Auctioneer may have under this Contract, the Auctioneer shall, at its sole discretion, have the right to sell or re-sell the Equipment by public or private sale and the Owner shall pay to the Auctioneer as liquidated damages in addition to all other amounts due hereunder, an amount equal to twenty percent (20%) of the proceeds realized from such sale or resale.

**4.06**  **Auctioneer's Right to Withdraw From Contract / Rescind Sale** – Notwithstanding any other provisions of this Contract, the Auctioneer shall have the right, at its discretion, to withdraw from this Contract and its obligations hereunder shall be unenforceable by the Trustee if the Trustee is in breach of any of its representations or warranties hereunder.

If, pursuant to this section, the Equipment or any part thereof is not sold at the auction, such equipment shall be deemed to have been withdrawn by the Trustee and the provisions of subparagraph 4.05(d), (e) and (f) shall apply.

**4.07**  **Use of Equipment** – Owner authorizes the Auctioneer to operate the Equipment for demonstrating it at auction.

**4.08**  **Lots** – The Auctioneer shall divide the Equipment into such lots as it may in its absolute discretion deem desirable for sale at the auction.  The Auctioneer shall not be liable for any loss or damages claimed in respect of the manner in which the Equipment is divided into lots nor in respect of any failure to divide the Equipment into lots.

**4.09**  **Administrative Fee** – The Owner acknowledges that the Auctioneer may charge purchasers an administrative fee based on the selling price of each lot.

**4.10**  **Collection of Proceeds** – The Auctioneer shall collect the full proceeds from the sale of the Equipment and- the Auctioneer shall:

(a)  withhold for its benefit all amounts payable to the Auctioneer hereunder, including commission, and any advances, together with interest thereon ; and

(b)  the Owner directs that all other funds realized from the sale of the Equipment be paid out in accordance with the terms of the Bankruptcy Court order approving the sale.

**4.11**  **Uncollected Proceeds** – The Auctioneer may, as it deems necessary, re-auction any part of the Equipment not sold or paid for at the auction and the Owner acknowledges that no monies shall be payable by the Auctioneer for any part of the Equipment until it has been paid for in full by the purchaser thereof.

**4.12**  **Other Consignments** – Equipment belonging to other owners may be sold at the auction.

**4.13**  **Owner's Name** – The Owner authorizes the Auctioneer to use Owner's name, trademark and logo in advertising the auction.

US Ch11 Straight R01_11         **Exhibit 1**         Initials _____  _____

4.14  **Entire Agreement** – This Contract:

    (a)    constitutes the entire agreement between the parties and supersedes and takes the place of all prior contracts, understandings, representations or warranties;

    (b)    may not be amended except in writing. There are no understandings, agreements, promises, terms, conditions, or warranties expressed or implied, whether orally or by law, statute or trade usage, other than as specifically stated herein; and

    (c)    shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, administrators, successors and assigns.

4.15  **Internet Bidding and Timed Auction Lot System** – The Auctioneer may in its sole discretion offer certain lots for sale, in conjunction with its public unreserved auction, to registered bidders using its proprietary online bidding service or using its silent "timed auction lot" system. The Auctioneer shall use its best effort to ensure that such technologies and systems are available at all auctions for which they have been advertised, however at any given sale

    (a)    only those lots which the Auctioneer deems appropriate shall be offered using such technologies and systems, and

    (b)    certain circumstances concerning the Internet and the technology in use are beyond the Auctioneer's control, and such systems may not be available at any given time or auction.

The Owner agrees that the Auctioneer shall be held harmless from any and all claims, demands, suits, actions, costs or causes of action, demands, costs or arising from the Auctioneer's decision whether or not to use such technologies or systems or its failure to offer such systems at any time.

4.16  **Force Majeure** – Neither party shall be held liable or responsible to the other party nor be deemed to have defaulted under or breached this Contract for failure or delay in fulfilling or performing any term of this Contract when such failure or delay is caused by or results from causes beyond the reasonable control of the affected party, including but not limited to fires, strikes, floods, adverse weather that has the potential to injure persons or damage property, acts of war, terrorism, riot, or public disorder, acts of God, lawful acts of public authorities or electronic failures and internet service provider.

4.17  **Jurisdiction** – This Contract is subject to and governed by the laws of the State of California. Any legal action brought by the parties arising from or relating to this Contract shall be litigated exclusively in the Bankruptcy Court, and the parties irrevocably attorn to the exclusive jurisdiction of such court for the resolution of such disputes. The parties irrevocably waive the right to demand a trial by jury in any dispute arising from or relating to this Contract.

US Ch11 Straight R01_11                  **Exhibit 1**                  Initials _____  _____