PETER C. ANDERSON
UNITED STATES TRUSTEE
ABRAM S. FEUERSTEIN, SBN 133775
ASSISTANT UNITED STATES TRUSTEE
EVERETT L. GREEN, SBN 237936
TRIAL ATTORNEY
UNITED STATES DEPARTMENT OF JUSTICE
OFFICE OF THE UNITED STATES TRUSTEE
3801 University Avenue, Suite 720
Riverside, CA 92501
Telephone:   (951) 276-6990
Facsimile:    (951) 276-6973
Email:          Everett.L.Green@usdoj.gov

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA, RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>ASR CONSTRUCTORS, INC.,<br>a California corporation<br><br>    Debtor.<br>_____<br>In re:<br><br>ANOTHER MERIDIAN COMPANY, LLC,<br>a California corporation<br><br>    Debtor.<br>_____<br>In re:<br><br>INLAND MACHINERY, INC.,<br>a California corporation<br><br>    Debtor.<br>_____<br><br>AFFECTS:<br><br>☒    All Debtors. | Case No. 6:13-bk-25794-MH<br><br>Chapter 11<br><br>**UNITED STATES TRUSTEE'S SUPPLEMENTAL BRIEF IN SUPPORT OF OBJECTION TO DEBTORS' MOTION FOR ORDER:**<br><br>**(1) APPROVING COMPROMISE UNDER RULE 9019 BETWEEN GOTTE ELECTRIC, INC., THE DEBTORS AND THEIR INSIDERS AND FEDERAL INSURANCE COMPANY;**<br>**(2) APPROVING PROCEDURES FOR (i) EXPEDITED PROCEDURE TO RESOLVE CLAIMS OBJECTIONS, (ii) DISTRIBUTION OF FUNDS OF THE ESTATES AND (iii) DISMISSAL OF THE CHAPTER 11 CASES; AND**<br>(3) **GRANTING RELATED RELIEF**<br><br>**Hearing:**<br>Date:     December 23, 2015<br>Time:    11:00 a.m.<br>Place:    United States Bankruptcy Court<br>             Courtroom 303<br>             3420 Twelfth Street<br>             Riverside, CA 92501 |

-1-

**TO THE HONORABLE MARK D. HOULE, UNITED STATES BANKRUPTCY JUDGE, DEBTORS, AND ALL PARTIES-IN-INTEREST:**

Peter C. Anderson, the United States Trustee for the Central District of California, Region 16 ("U.S. Trustee"), hereby submits his supplemental brief in support of his objection to the Motion.[1]

## I. SUMMARY OF ARGUMENT

These cases have been run for the benefit of insiders and not creditors. Creditors do not receive the benefit of a disclosure statement and plan and are not allowed to participate in a restructuring in a way that the Code contemplates. Instead, the Debtors propose a compromise that asks the Court to apply selective portions of the Code on an ad hoc basis, contravenes fundamental principles of the Code, and modifies California law.

## II. ARGUMENT

### A. *Jevic* Is Not Binding Authority.

At the December 8, 2015 hearing on the Motion, the Court tentatively ruled that it would follow *Jevic* and asked the U.S. Trustee to submit a supplemental brief distinguishing *Jevic*.

The Court is not mandated to follow *Jevic*. A recent unpublished decision of the Bankruptcy Appellate Panel for the Ninth Circuit, *Dorroh v. Wurst (In re Warren)*, BAP No. OR-10-1110-MKHJu, 2011 Bankr. LEXIS 1494, at *14-20 (B.A.P. 9th Cir. January 21, 2011) (Jury, Meredith), casts doubt on *Jevic's* reasoning.[2]

In that decision, the BAP reversed a bankruptcy court's order approving a compromise because the compromise contravened section 726 – a statutory scheme, according to the BAP, that is a foundational premise of the Bankruptcy Code and that provides a textual basis for "the fundamental principle that creditors of equal priority should receive pro rata shares of the debtor's property." *Id*. at *15-16 (citing supporting authority).

---

[1] The Motion is Docket No. 535. Unless stated otherwise, capitalized terms have the meanings defined in the Motion.

[2] In accordance with the Local Bankruptcy Rules, a copy of this unpublished opinion is attached hereto.

1    Similar to the compromise considered in *Warren*, the Debtors' compromise violates several
2 fundamental principles of the Code. *See Begier v. Internal Revenue Service*, 496 U.S. 53, 58 (1990)
3 ("[e]quality of distribution among creditors is a central policy of the Code.")  The Court should
4 reject it for the same reasons Warren rejected the compromise in that case.

5    **B.    Even If The Court Adopts *Jevic*, The Debtors Failed To Satisfy *Jevic's***
6           **Evidentiary Burden.**

7    A panel of Third Circuit Judges in *Jevic* announced that bankruptcy courts might, "in rare
8 instances" approve structured dismissals that do not strictly adhere to the Bankruptcy Code's
9 priority scheme. *Jevic*, 787 F.3d at 180.  The *Jevic* panel, however, considered an evidentiary
10 record that was far more detailed than the one submitted here.

11    First, although the Debtors avoid the phrase, they seek to substantively consolidate several
12 estates.  A substantive consolidation order "combine[s] the assets and liabilities of separate and
13 distinct - but related - legal entities into a single pool and treat[s] them as though they belong to a
14 single entity. *Alexander v. Compton (In re Bonham)*, 229 F.3d 750, 764 (9th Cir. 2000).  The
15 Motion's calculation and proposed pro rata distribution combines the assets of the Estates into a
16 single common fund and makes distributions to creditors of separate and distinct Estates.
17 *See* Motion at 2 (stating that calculation of pro rata distributions shall be on a  collective basis that
18 assumes . . . that the Estates are consolidated such that creditors of Meridian and Inland will
19 participate in the distribution on a pro-rata basis with creditors of ASR, including Gotte and
20 ICW . . . ).

21    Yet the Debtors failed to provide any evidence that would support substantive consolidation.
22 The Debtors' burden, among other things, requires that they establish (1) whether creditors dealt
23 with the entities as a single economic unit and did not rely on their separate identity in extending
24 credit; or (2) whether the affairs of the debtor are so entangled that consolidation will benefit all
25 creditors. *See Bonham*, 229 F.3d at 766.  No such evidence is presented here.

26    Where a debtor does not establish these factors, the Ninth Circuit declines to substantively
27 consolidate estates. *See, e.g.*, *Anaconda Bldg. Materials Co. v. Newland*, 336 F.2d 625, 627
28 (9th Cir. 1964).

Second, the parties in *Jevic* presented evidence that the secured creditors would "unequivocally and credibly" refuse to agree to a similar deal in chapter 7. *Jevic*, 787 F.3d at 178. The Debtors provide no evidence of the existence of viable alternatives. In agreeing to the curve-out, Federal's counsel stated that Federal is buying its peace in the Gotte litigation. There is no evidence that Federal cannot buy its peace in chapter 7.[3]

Finally, the *Jevic* panel relied on distinguishable supporting authority. *Jevic* held that section 349 provides statutory support for a structured dismissal because section 349 authorizes a bankruptcy court to alter the effects of dismissal "for cause" or for any "acceptable reason." *Jevic*, 787 F.3d at 181 (citing non-binding supporting authority). The Ninth Circuit does not appear to support the *Jevic's* panel's interpretation of section 349.

In *Income Property Builders*, 699 F.2d 963, 965 (9th Cir. 1982), the Ninth Circuit expressly held that the effect and impact of section 349 is that "the debtor's debts and property are subject to the general laws, unaffected by bankruptcy concepts."

One consequence of granting the Motion is that the Court would apply section 349 to over-write and trump the state law rights of the taxing authorities. The Court should decline to do so.

## III. CONCLUSION

Because the Motion subverts the comprehensive priority scheme that Congress expressed in the Code, the compromise is not in the best interests of creditors. Rather than endorse the Debtors' attempt to apply bits and pieces of the Code on an ad hoc basis, this Court should deny approval of the Motion.

DATED: December 16, 2015    PETER C. ANDERSON
    UNITED STATES TRUSTEE

    By:    /s/ Everett L. Green
        Everett L. Green
        Trial Attorney

---

[3] Chapter 7 trustees in the Riverside division routinely negotiate curve out agreements.

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

Office of the U.S. Trustee, 3801 University, Suite 720, Riverside, CA 92501

A true and correct copy of the foregoing document entitled (*specify*): U.S. Trustee's Supplemental Objection to Compromise Motion
_____
_____
_____
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 12/16/2015, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

See NEF service page

☑ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 12/16/2015, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtors, ASR Constructors, Inc., 33891 Mission Trails, Wildomar, CA 92595

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) 12/16/2015, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Hon. Mark D. Houle, 3240 Twelfth St. Ste. 365, Riverside, CA 92501-3819 (overnight mail)

☑ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 12/16/2015 | Everett L. Green | /s/ Everett L. Green |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012* **F 9013-3.1.PROOF.SERVICE**

# Mailing Information for Case 6:13-bk-25794-MH

### Electronic Mail Notice List

The following is the list of **parties** who are currently on the list to receive email notice/service for this case.

- **James C Bastian**    jbastian@shbllp.com
- **J Scott Bovitz**    bovitz@bovitz-spitzer.com
- **David Cantrell**    dcantrell@lc-law-llp.com
- **Peter L Duncan**    peterd@psdslaw.com, theresam@psdslaw.com
- **Jonathan J Dunn**    jdunn@smtdlaw.com, aharris@smtdlaw.com;sbh@smtdlaw.com
- **Helen R Frazer**    hfrazertrustee@gmail.com
- **Margaret E Garms**    margaret@parkinsonphinney.com
- **Everett L Green**    everett.l.green@usdoj.gov
- **Eric M Heller**    eric.m.heller@irscounsel.treas.gov
- **Marilyn Klinger**    Marilyn.Klinger@sedgwicklaw.com, Annie.Tualla@sedgwicklaw.com;Joel.Long@sedgwicklaw.com;Kevin.Gilliland@sedgwicklaw.com
- **Jennifer Leland**    JLeland@robinskaplan.com
- **Edward D Lodgen**    EDLodgen@rkmc.com
- **Melissa Davis Lowe**    mdavis@shbllp.com, lverstegen@shbllp.com
- **Byron B Mauss**    efilings@amlegalgroup.com
- **Ryan D ODea**    rodea@shbllp.com, sswartzell@shbllp.com
- **Joshua K Partington**    efilings@amlegalgroup.com
- **Ronak Patel**    rpatel@co.riverside.ca.us, mdominguez@co.riverside.ca.us
- **Michael A Scherago**    mscherago@landslawyers.com
- **Jason K Schrader**    jason.K.Schrader@usdoj.gov
- **Jodi Siegner**    jsiegner@deconsel.com
- **Gregory H Smith**    gsmith@publiccounsel.org
- **Mohammad Tehrani**    Mohammad.V.Tehrani@usdoj.gov
- **United States Trustee (RS)**    ustpregion16.rs.ecf@usdoj.gov
- **David Veis**    dcveis@rkmc.com
- **Howard J Weg**    hweg@robinskaplan.com
- **Gilbert B Weisman**    notices@becket-lee.com

### Manual Notice List

The following is the list of **parties** who are **not** on the list to receive email notice/service for this case (who therefore require manual noticing/service). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

**John P Bevan**
UCOP-OGC-The Regents of UC
1111 Franklin St 8th Fl
Oakland, CA 94607-5200

**Delmar Commercial Real Estate Services, Inc**
10300 Fourth St Ste 200
Rancho Cucamonga, CA 91730

**Todd E Kobernick**
2448 Historic Decatur Rd Ste 220
San Diego, CA

**Melissa Davis Lowe**
SHULMAN HODGES & BASTIAN LLP
8105 Irvine Ctr Dr #600
Irvine, CA 92618

**Markel Insurance Company**
8755 W. Higgins
Ste 610
Chicago, IL 60631-2751

**Rodgers, Anderson, Malody & Scott, LLP CPAs**
735 East Carnegie Dr
Ste 100
San Bernardino, CA 92408

**Shulman Hodges & Bastian LLP**
8105 Irvine Center Dr, Ste 600
Irvine, CA 92618

## Creditor List

Click the link above to produce a complete list of **creditors** only.

## List of Creditors

Click on the link above to produce a list of **all** creditors and **all** parties in the case. User may sort in columns or raw data format.

**3.**     **Service By Email (cont'd)**

Debtors' Counsel, Jim Bastian
JBastian@shbllp.com

Debtors' Counsel, Melissa Davis Lowe
MLowe@shbllp.com

Counsel to Creditor Federal Insurance Co., Jonathan J. Dunn
jdunn@smtdlaw.com, aharris@smtdlaw.com; sbh@smtdlaw.com

Counsel to Creditor Berkeley Regional Insurance Co., Marilyn Klinger
Marilyn.Klinger@sedgwicklaw.com

Counsel to Gotte Electric, Inc., Byron B. Mauss
efilings@amlegalgroup.com

Counsel to Creditor Riverside County Treasurer Tax Collector, Ronak Patel
rpatel@co.riverside.ca.us

Counsel to Creditor Insurance Co. of the West, David Veis
dcveis@rkmc.com

# Unpublished Opinion



**In re: CEDAR S. WARREN, Debtor. ROBERT DORROH; BARBARA DORROH, Appellants, v. DAVID F. WURST, Chapter 7 Trustee; CEDAR S. WARREN, Appellees.**

**BAP No. OR-10-1110-MkHJu**

**UNITED STATES BANKRUPTCY APPELLATE PANEL FOR THE NINTH CIRCUIT**

*2011 Bankr. LEXIS 1494*

**January 21, 2011, Argued and Submitted, Seattle, Washington
March 15, 2011, Filed**

**NOTICE:** THIS DISPOSITION IS NOT APPROPRIATE FOR PUBLICATION. ALTHOUGH IT MAY BE CITED FOR WHATEVER PERSUASIVE VALUE IT MAY HAVE (SEE *FED. R. APP. P. 32.1*), IT HAS NO PRECEDENTIAL VALUE. SEE 9TH CIR. BAP RULE 8013-1.

**SUBSEQUENT HISTORY:** Related proceeding at *Dorroh v. Deerbrook Ins. Co., 2012 U.S. Dist. LEXIS 135590 (E.D. Cal., Sept. 21, 2012)*

**PRIOR HISTORY:** [*1]
Appeal From The United States Bankruptcy Court for the District of Oregon. Bk. No. 07-60674. Honorable Frank R. Alley, Chief Bankruptcy Judge, Presiding.
*In re Warren, 2010 Bankr. LEXIS 907 (Bankr. D. Or., Mar. 22, 2010)*

**COUNSEL:** Joshua S. Markowitz of Carcione, Cattermole, Dolinski, et al, argued for Appellants Robert and Barbara Dorroh.

David Bryan Mills argued for Appellee David Wurst, Chapter 7 Trustee.

**JUDGES:** Before: MARKELL, HOLLOWELL and JURY, Bankruptcy Judges.

**OPINION**

**MEMORANDUM**[*]

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see *Fed. R. App. P. 32.1*), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

**INTRODUCTION**

Chapter 7[1] trustee David Wurst ("Trustee") sought to settle the claim of debtor Cedar Warren ("Warren") against Deerbrook Insurance Company ("Deerbrook"). Robert Dorroh ("Dorroh") and his wife Barbara Dorroh (jointly, the "Dorrohs"), Warren's largest creditors, objected and submitted a competing offer for the claim. The bankruptcy court rejected the Dorrohs' offer and approved the Trustee's proposed settlement instead. The Dorrohs appeal. We VACATE and REMAND.

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, *11 U.S.C. §§ 101-1532*, and [*2] all Rule references are to the *Federal Rules of Bankruptcy Procedure, Rules 1001-9037*. All Civil Rule references are to the Federal Rules of Civil Procedure.

## FACTS

The material facts are mostly undisputed. Warren and Dorroh were involved in an automobile accident that left Dorroh gravely injured and permanently disabled. Warren admitted responsibility. Deerbrook insured the vehicle Warren was driving. The insurance policy carried a limit of $15,000.

After the accident, the Dorrohs pursued recoveries from, among others, Warren, Ford Motor Company (the manufacturer of the car that Dorroh was driving) and various governmental entities. Dorroh also filed a claim against his employer's workers' compensation insurance carrier, Superior National Insurance Company ("Superior").

During settlement negotiations between the Dorrohs and Deerbrook, representing Warren, the parties initially agreed to a policy limits settlement of $15,000. There was, however, a glitch. Based on a notice of lien that Deerbrook received from Superior, Deerbrook insisted that it needed to name Superior as a co-payee on any settlement payment made to the Dorrohs. Otherwise, Deerbrook asserted, it risked liability to Superior [*3] for any amount paid to the Dorrohs without making provision for Superior's potential subrogation and reimbursement rights.

The Dorrohs represented to Deerbrook that Superior had denied Dorroh's workers' compensation claim and therefore that there was no need to provide for a potential subrogation claim. The Dorrohs, however, never submitted to Deerbrook proof of the denial of the workers' compensation claim.[1] On the other hand, the Dorrohs did offer to indemnify Warren and hold Warren (but not Deerbrook) harmless "from any third parties who may claim against your insured for additional monies over and above the $15,000." Jan. 31, 2001 Letter from Joseph Carcione, Jr. to Jason Kenady.

---

1  In fact, at the same time that Superior sent its form denial letter to Dorroh, Superior sent several other documents to him requesting that he fill out various forms and provide documentation to support his workers' compensation claim. A couple of months later, Superior followed up with two additional letters. One advised that, under California law, any settlement between Dorroh and the third party responsible for his injury was invalid without the consent of Dorroh's employer/workers' compensation carrier, [*4] and that the carrier would be entitled to reimbursement from any third party settlement for any sums paid by the carrier to Dorroh or for his medical treatment. The other letter referenced the "continuing investigation" of Superior and requested information and documents concerning any actions that Dorroh was pursuing to recover on account of the automobile accident. The Workers' Compensation Appeals Board eventually ruled that Dorroh was injured in the course and scope of his employment. As a result, Dorroh ultimately received hundreds of thousands of dollars in workers' compensation benefits.

---

The impasse did not break. The Dorrohs then filed a personal injury complaint against Warren and others in the California Superior Court (the "State Court"). While the State Court litigation was pending, Warren filed a chapter 7 bankruptcy. The Dorrohs obtained relief from the automatic stay so that they could proceed to trial in the State Court and liquidate their claim against Warren.

The State Court bench trial resulted in a $16.5 million judgment against Warren in favor of the Dorrohs ($15 million on account of Dorroh's personal injury claim and $1.5 million on account of his wife's loss of [*5] consortium claim). Warren and Deerbrook appealed the State Court judgment, which was upheld on appeal and is now final.

Meanwhile, Warren had scheduled as an asset of his bankruptcy estate a "bad faith claim" against Deerbrook (the "Bad Faith Claim"). The Trustee summarily described the Bad Faith Claim as follows:

> The Dorrohs contend that Deerbrook did not accept their offer to settle the matter for policy limits and that a claim in favor of the debtor has arisen for bad faith refusal to settle the claims. The Trustee asserts that any such claims and all other prepetition claims of the debtor against Deerbrook and any related insurance entity arising out of the foregoing accident are property of the estate.

May 18, 2009, Motion to Settle & Compromise.

In May 2009, subject to bankruptcy court approval, the Trustee reached agreement with Deerbrook for the

settlement of the Bad Faith Claim in exchange for a cash payment from Deerbrook of $125,000 (the "2009 Deerbrook Settlement"). The Trustee moved for bankruptcy court approval of the 2009 Deerbrook Settlement.

The Dorrohs filed an objection to the 2009 Deerbrook Settlement because, according to them, the Bad Faith Claim was worth millions. [*6] Along with their objection, the Dorrohs submitted a competing offer, which provided for the Dorrohs to pay $47,000 to the Trustee (the "2009 Competing Offer"). This sum was meant to cover the Trustee's commission, all of the Trustee's attorney fees and all of the allowed general unsecured claims. The Dorrohs also agreed to subordinate their claim to all timely-filed claims, which meant that all timely-filed claims other than the Dorrohs' subordinated claim would be paid in full. In exchange for the $47,000, the Trustee would retain counsel on a contingency-fee basis to litigate the Bad Faith Claim. Any proceeds recovered from the litigation would then be paid to the Trustee to reimburse litigation costs, to satisfy any unpaid administrative expenses, and then to pay the only remaining claim - that of the Dorrohs.

In June 2009, the Trustee moved for contingent approval of the 2009 Competing Offer. According to this motion, the Trustee would accept the Dorrohs' 2009 Competing Offer only if the bankruptcy court denied approval of the 2009 Deerbrook Settlement.

In July 2009, the Trustee filed a brief in support of the 2009 Deerbrook Settlement. According to the Trustee, this offer was "generous" [*7] because the Bad Faith Claim "had little or no merit." The Trustee further described the claim as "not viable" and described the chances of prevailing on the claim as de minimus. The Trustee also explained that the Dorrohs' 2009 Competing Offer was inferior, because the Trustee would be obligated to keep the estate open potentially for years while prosecution of the Bad Faith Claim took place, and because the funds the Dorrohs offered to pay would be more than eaten up by the costs and expenses associated with the bad faith litigation.

For roughly the next six months, the Dorrohs on the one hand and the Trustee and Deerbrook on the other hand engaged in heated litigation over the merits of the 2009 Deerbrook Settlement and the 2009 Competing Offer. This included discovery, discovery disputes, a two-day bench trial, and multiple pre- and post-trial briefs. At least in part as a result of the ongoing litigation, the Trustee filed a Notice in November 2009 in which he declared that the Dorrohs' 2009 Competing Offer no longer was in the best interest of the estate. He thus effectively withdrew his support for the 2009 Competing Offer.

After that withdrawal, in December 2009, the Dorrohs made [*8] a series of new offers to the Trustee in an attempt to address concerns and problems raised by the Trustee to each of the Dorrohs' offers. Ultimately, at the conclusion of the two-day bench trial, the court gave Deerbrook and the Dorrohs until January 11, 2010 to submit to the court their final and best bids, the bids to be sealed and opened by the court.

When unveiled, Deerbrook's final bid proposed to purchase the estate's Bad Faith Claim in exchange for the following:

1. Deerbrook would pay all administrative expenses (estimated at $100,000);

2. Deerbrook would make its best efforts to purchase (at full value plus 5% interest - roughly a $25,000 value) all unsecured claims other than the Dorrohs' claim;

3. Deerbrook would withdraw all claims it purchased; and

4. Deerbrook would pay $125,000 to the estate on account of all claims not purchased.

Under the Dorrohs' competing final bid, the Dorrohs would purchase the estate's Bad Faith Claim in exchange for the following:

1. The Dorrohs would waive any right to payment on account of their bankruptcy claim and waive any standing they otherwise might have in the bankruptcy case; according to the Dorrohs, for case administration purposes, their [*9] waiver would be equivalent to a withdrawal of their claim, but the waiver/withdrawal would be without prejudice to any rights that the Dorrohs, Warren, or the estate might have against Deerbrook; and

2. The Dorrohs would pay to the Trustee an amount sufficient to: (a) satisfy in full all allowed administrative claims and the Trustee's commission, (b) satisfy in full (plus interest) all valid and timely-filed unsecured claims, and (c) create a surplus estate (by paying one additional dollar beyond what is necessary to satisfy items (a) and

(b)).

The bankruptcy court ultimately issued a memorandum decision holding that Deerbrook's final bid was superior to the Dorrohs' final bid. In its decision, the bankruptcy court first determined that the Bad Faith Claim had little or no legal merit. According to the bankruptcy court, Deerbrook did not act in bad faith because it was entitled to protect itself from liability by making reasonable provision for Superior's potential reimbursement claim, and the Dorrohs' refusal to consider or accept payment terms reasonably addressing the subrogation claim issue absolved Deerbrook from any liability for not settling within the policy limits. See *Coe v. State Farm Mutual Automobile Ins. Co., 66 Cal. App. 3d 981, 136 Cal. Rptr. 331 (1977)*. [*10] The bankruptcy court reasoned that Coe was controlling and that Deerbrook's proposed settlement was a more than adequate recovery for the estate on account of the bad faith claim. Thus evaluated as a compromise, the court concluded that the sale to/settlement with Deerbrook was fair, equitable and reasonable under the criteria set forth in *Martin v. Kane (In re A & C Properties), 784 F.2d 1377 (9th Cir. 1986)*.

As for the court's evaluation of Deerbrook's offer from a sale perspective, the bankruptcy court acknowledged the Dorrohs' argument that the Dorrohs' final bid was more advantageous to the estate. Without citation to authority, however, the bankruptcy court concluded that the Dorrohs' final bid was inferior and should be rejected because it would generate wasteful litigation in state court and was unfair to Deerbrook, which would needlessly have to bear the cost of defending against an unmeritorious claim.

The bankruptcy court also rejected the Dorrohs' argument that the Trustee's proposed sale to/settlement with Deerbrook amounted to an impermissible attempt to avoid § 726's distribution scheme. According to the court, assuming without deciding that the Trustee's proposal did [*11] violate § 726's distribution scheme, rejecting the deal on that basis would exalt form over substance because all of the estate's creditors other than the Dorrohs would be far better off, and the Dorrohs would not be significantly worse off, than they would be if § 726's distribution scheme was strictly enforced.

The bankruptcy court entered an order approving the sale to/settlement with Deerbrook. The Dorrohs timely appealed.[2]

2  Even though the parties to this appeal served on Deerbrook a copy of the notice of appeal and copies of all of the appellate briefs, Deerbrook never formally was made a party to this appeal. If the BAP Clerk's Office has not already done so, it should amend the BAP docket to list Deerbrook as an interested party, to ensure that Deerbrook timely receives a copy of our disposition of this appeal.

## JURISDICTION

The bankruptcy court had jurisdiction pursuant to *28 U.S.C. §§ 1334* and *157(b)(1)*. We have jurisdiction under *28 U.S.C. § 158(a)(1)*.

## ISSUES[3]

3  Both the Trustee and the Dorrohs made statements in the bankruptcy court indicating that the Bad Faith Claim did not accrue under California law until the Fall of 2009, well after Warren commenced his bankruptcy. Some courts [*12] have held that a cause of action that does not accrue under state law until after the bankruptcy is filed is not property of estate. See e.g. *In re de Hertogh, 412 B.R. 24, 28-31 (Bankr. D. Conn. 2009)*. However, in the Ninth Circuit, any contingent interest of the debtor "sufficiently rooted in the pre-bankruptcy past" is estate property, even if the contingency is not satisfied until after the bankruptcy is filed. See *Neuton v. Danning (In re Neuton), 922 F.2d 1379, 1382-83 (9th Cir. 1990)* (contingent interest in trust property); *Rau v. Ryerson (In re Ryerson), 739 F.2d 1423, 1425-26 (9th Cir. 1984)* (contingent rights under employment contract); *Ellwanger v. Budsberg (In re Ellwanger), 140 B.R. 891, 898 (Bankr. W.D. Wash. 1992)* (contingent legal malpractice claim). In any event, the Dorrohs did not raise this issue either in the bankruptcy court or in its appellate briefs, so it is deemed waived. *Golden v. Chicago Title Ins. Co. (In re Choo), 273 B.R. 608, 613 (9th Cir. BAP 2002)*.

1. Did the bankruptcy court abuse its discretion by approving the settlement with Deerbrook as a compromise under *Rule 9019*?

2. Did the bankruptcy court abuse its discretion by approving the settlement with [*13] Deerbrook as a sale

of estate property under *§ 363*?

**STANDARDS OF REVIEW**

We review a bankruptcy court's decision to approve a compromise for abuse of discretion. *Goodwin v. Mickey Thompson Entm't Group, Inc. (In re Mickey Thompson Entm't Group, Inc.), 292 B.R. 415, 420 (9th Cir. BAP 2003)* (citing *In re A & C Props., 784 F.2d at 1380*). We also review sales approved under *§ 363* for abuse of discretion. *Fitzgerald v. Ninn Worx Sr Inc. (In re Fitzgerald), 428 B.R. 872, 880 (9th Cir. BAP 2010)* (citing *Simantob v. Claims Prosecutor, LLC. (In re Lahijani), 325 B.R. 282, 287 (9th Cir. BAP 2005))*.

Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." *United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)* (en banc). And if the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* [*14] (internal quotation marks omitted).

**DISCUSSION**

**A. The bankruptcy court abused its discretion when it approved the settlement with Deerbrook as a compromise under Rule 9019.**

*Rule 9019* permits a bankruptcy court to approve a compromise or settlement. While *Rule 9019* gives the bankruptcy court broad discretion in approving settlements, it may only approve them if they are "'fair and equitable' to the creditors." *Mickey Thompson, 292 B.R. at 420* (emphasis added) (citing *Woodson v. Fireman's Fund Ins. Co. (In re Woodson), 839 F.2d 610, 620 (9th Cir. 1988))*. Further, the settlement must be reasonable under the circumstances, and it must be in the best interests of the estate. *Mickey Thompson, 292 B.R. at 420* (citing *A & C Properties, 784 F.2d at 1381*). The trustee bears the burden to establish that the criteria for approval of the settlement have been met. Id.

The fairness and equity of a settlement are evaluated under the criteria set forth in Woodson and A & C Properties, which are:

(a) The probability of success in the litigation; (b) the difficulties, if any to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay [*15] necessarily attending it; [and] (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premise.

*Mickey Thompson, 292 B.R. at 420* (citing *A & C Properties, 784 F.2d at 1381*).

The bankruptcy court here recited and considered the appropriate criteria from these cases, but we question its application of the facts to the relevant legal rules. We primarily are concerned that the settlement with Deerbrook contravenes the Bankruptcy Code's rules for distribution of estate property under *§ 726*. That section sets forth a detailed scheme for the equitable distribution of assets of the estate. This statutory scheme is a foundational premise of the Bankruptcy Code; it provides the textual basis for the fundamental principle that creditors of equal priority should receive pro rata shares of the debtor's property. *Begier v. I.R.S., 496 U.S. 53, 58, 110 S. Ct. 2258, 110 L. Ed. 2d 46 (1990)*; *Endo Steel, Inc. v. Janas (In re JWJ Contracting Co., Inc.), 371 F.3d 1079, 1081 (9th Cir. 2004)*; see also *Cunard Steamship Co. v. Salen Reefer Servs. AB, 773 F.2d 452, 459 (2d Cir. 1985)* ("The guiding premise of the Bankruptcy Code, like its predecessor, the Bankruptcy Act, is the equality of distribution [*16] of assets among creditors.").

By unequally distributing proceeds from the liquidation of an estate asset - the settlement of the Bad Faith Claim - the settlement as approved contravened the fundamental concept of ratable distribution to creditors. In exchange for the Bad Faith Claim, Deerbrook in part promised to use its best efforts to acquire at face value, plus 5% interest, all unsecured claims other than the Dorrohs'. This blatant discrimination against the Dorrohs' multi-million dollar claim returned to the estate a value of roughly $25,000.

The Trustee argues that, because Deerbrook was agreeing to pay the above-referenced consideration directly to the creditors, the settlement was not at odds with *§ 726*. According to the Trustee, so long as he never touched the settlement funds, an uneven distribution of the settlement funds was permissible. The Trustee cites

*Official Unsecured Creditors' Committee v. Stern (In re SPM Mfg. Corp.), 984 F.2d 1305, 1313 (1st Cir. 1993)*, for the unremarkable proposition that the rule requiring ratable distribution of estate property only applies to estate property.[4]

> 4  Some courts have construed SPM Mfg. expansively and have cited this case for the proposition [*17] that, under a chapter 11 plan, a senior creditor class may "gift" or voluntarily contribute some of its plan distributions to a junior creditor class without violating the absolute priority rule; other courts have rejected this notion. See *In re Journal Register Co., 407 B.R. 520, 529-34 (Bankr. S.D.N.Y. 2009)* (listing cases going both ways and applying gift doctrine). The Second Circuit recently rejected this attempt to broadly construe SPM Mfg. *Dish Network Corp. v. DBSD North America, Inc. (In re DBSD North America, Inc.), 634 F.3d 79, 2011 WL 350480 (2d Cir., Feb. 7, 2011)*.
>
> Regardless, this construction of *SPM Mfg.* is patently inapposite to the facts presented here. Deerbrook is not a senior or secured creditor proposing to gift its plan distribution to another creditor class, but rather is proposing to funnel proceeds from the sale of an estate asset to some but not all of the debtor's unsecured creditors.

The Trustee's argument ignores the fact that the $25,000 to be paid by Deerbrook under the settlement was part of the consideration from the Trustee's sale of the estate's Bad Faith Claim against Deerbrook. As this consideration was property of the estate pursuant to *§ 541(a)(6)*, all of the [*18] proceeds needed to be accounted for and distributed ratably to the estate's creditors, including the Dorrohs. See *§ 726*; see generally *Hansen v. MacDonald Meat Co. (In re Kemp Pacific Fisheries Inc.), 16 F.3d 313, 316 (9th Cir. 1994)* (holding that the debtor transfers property of the estate for preference purposes if the transfer "'diminish[es] directly or indirectly the fund to which creditors of the same class can legally resort for the payment of their debts, to such an extent that it is impossible for other creditors of the same class to obtain as great a percentage as the favored one.'") (quoting 4 Collier on Bankruptcy ¶ 547.03, at 547-26 (15th ed. 1993)).

The bankruptcy court concluded that the uneven distribution of the settlement funds did not materially disadvantage the Dorrohs, so enforcing *§ 726* in this case would exalt "form over substance." According to the bankruptcy court, if the $25,000 Deerbrook intended to pay directly to the unsecured creditors other than the Dorrohs was excised from the settlement as a violation of *§ 726*, and Deerbrook only paid the $125,000 slated for ratable distribution to all unsecured creditors, then all of them, including the Dorrohs, would [*19] receive less money.

But the court's analysis is flawed. It erroneously assumes that the $25,000 in settlement funds were not going to be distributed to all unsecured creditors other than the Dorrohs. In reality, the settlement as approved provided for this distribution. Indeed, the court's order approving the settlement expressly directs the Trustee and Deerbrook to "carry out the terms of the Deerbrook proposal," including this $25,000 distribution. If this same $25,000 were ratably distributed, the Dorrohs could expect to receive an additional $24,975, as their multi-million claim, liquidated and uncontested, essentially engulfs all other claims. In short, the bankruptcy court clearly erred when it found that the uneven distribution of settlement funds did not materially disadvantage the Dorrohs.

As a result, the bankruptcy court misapplied the facts to the criteria for approving compromises and thereby abused its discretion. In the parlance of *Hinkson*, the bankruptcy court's findings regarding the impact of the settlement on the ratable distribution of the estate's assets was not supported by inferences that could be drawn from facts in the record. Further, its findings regarding [*20] the value of the Bad Faith Claim and Deerbrook's litigation expenses (if the claim were sold to the Dorrohs) also were problematic, as discussed below.

**B. The bankruptcy court abused its discretion when it approved the settlement with Deerbrook as a sale of estate property under § 363.**

When a trustee seeks to settle a claim that is an asset of the estate, the proposed settlement of the claim is equivalent to a sale of the intangible property associated with that claim; therefore, the proposed settlement implicates not only the compromise procedures of *Rule 9019*, but also the sale provisions of *§ 363* and *Rule 6004*. *Mickey Thompson, 292 B.R. at 421*; see also *Fitzgerald, 428 B.R. at 884*; *Lahijani, 325 B.R. at 290*.

Pursuant to *§ 363(b)* and *Rule 6004*, a trustee may

sell estate property other than in the ordinary course of business. The trustee, and ultimately the court, are required to assure that any proposed sale provides the optimal value for the asset to be sold. See *Fitzgerald, 428 B.R. at 884*; *Lahijani, 325 B.R. at 288-89*; *Mickey Thompson, 292 B.R. at 421-22*. Once competing bids are presented, the trustee and the court must ascertain which bid is of greater benefit to the estate. See [*21] *Lahijani, 325 B.R. at 289-90*; see also *Fitzgerald, 428 B.R. at 883-84*.

Here, the bankruptcy court received competing final bids from both Deerbrook and the Dorrohs. In ascertaining the relative value of each bid, the bankruptcy court exclusively focused on one factor: if the Dorrohs successfully acquired the Bad Faith Claim, they intended to litigate the claim in state court. According to the court, it would have been inequitable to facilitate the Dorrohs' attempts to litigate the Bad Faith Claim and to subject Deerbrook to the expense of defending against the claim. The court's determination hinged on its assessment of the Bad Faith Claim as having little or no merit.

The bankruptcy court's analysis of the competing bids is problematic in a number of respects. First of all, we cannot agree with the bankruptcy court's determination for the following reason: if, as the bankruptcy court believed, it was inequitable to make Deerbrook defend against the Bad Faith Claim, it also should have been inequitable for the Trustee to accept Deerbrook's significant consideration offered to acquire the Bad Faith Claim - by most accounts an amount approximating a quarter of a million dollars.[5] Conversely [*22] stated, if it was equitable for the Trustee to take $250,000 from Deerbrook for the purchase of a claim of little or no merit, it also should have been equitable for the Trustee to accept a purchase offer of potentially greater value to the estate from the Dorrohs and let Deerbrook defend against the Bad Faith Claim to the tune of $250,000.

> 5 The parties estimated that Deerbrook expected to pay approximately $250,000 for all components of its purchase of the Bad Faith Claim.

Of course, if the bankruptcy court had made an express finding that the Bad Faith Claim was frivolous, then the Trustee's sale/compromise of the Bad Faith Claim would have been as inappropriate as litigating it. Faced with a truly frivolous claim, the court should have denied any sale or compromise of the claim, and the Trustee likely should have sought to abandon the claim under *§ 554*. See generally *Lopez v. Specialty Restaurants Corp. (In re Lopez), 283 B.R. 22, 32-33 (9th Cir. BAP 2002)* (Klein, J., concurring). On a fair reading of the record as a whole, we cannot conclude that the bankruptcy court found that the Bad Faith Claim was frivolous; we are not yet to the point where payment of $250,000 can be claimed [*23] to be a nuisance settlement. Moreover, the conduct of all of the parties - the Dorrohs, the Trustee and Deerbrook - generally has been inconsistent with the notion that the claim is frivolous.[6]

> 6 Whatever merit is attributed to the Bad Faith Claim, so long as it is not frivolous, our analysis and disposition of this appeal stands. We have reviewed the various arguments in support of and against the merits of the Bad Faith Claim. Suffice it to say that we do not consider the Bad Faith Claim frivolous. There is perhaps a little traction in some of the Dorrohs' arguments. For instance, it is conceivable that the Dorrohs might be able to distinguish Coe based on the facts surrounding the Dorrohs' settlement offer, particularly their written representation that the workers' compensation claim had been denied and their offer to indemnify Deerbrook's insured (Warren) for any claims in excess of the $15,000 policy limits to be paid by Deerbrook. We emphasize that we do not mean to express any opinion on the merits or ultimate likelihood of success of the Bad Faith Claim, other than to say that we do not think it is frivolous.

Second, we hold that the financial burden to a non-debtor of needing [*24] to defend itself in state court against a claim sold by the estate is not a relevant consideration in weighing the benefit to the estate of competing offers for the purchase of the claim.[7] Furthermore, there was no evidence in the record from which the bankruptcy court could have concluded that the expense of defending against the Bad Faith Claim would be any greater a financial burden to Deerbrook than immediately paying $250,000 on account of the settlement. In fact, California has procedural rules that ultimately could enable Deerbrook to recoup a significant amount of its state court litigation fees and/or costs. See, e.g., *Cal. Civ. Proc. Code §§ 128.7, 998*. Thus, if the claim is as meritless as Deerbrook contends, then it is

quite possible that the net financial burden to Deerbrook of litigating the Bad Faith Claim might be less than the cost of its settlement with the Trustee.

> 7   Our holding is consistent with Ninth Circuit law that a party having to defend against litigation instead of achieving a "quick victory" constitutes minimal prejudice. See *Bateman v. U.S. Postal Service, 231 F.3d 1220, 1224-25 (9th Cir. 2000)*.

Third, having exclusively focused on its equity determination, [*25] the court in effect neglected to weigh the relative value of the competing final bids. Given that the bankruptcy court did not determine which bid was of greater benefit to the estate, its ruling did not meet the requirements for approval of a sale. See *Lahijani, 325 B.R. at 289-90*; see also *Fitzgerald, 428 B.R. at 883-84*.

Fourth, as noted previously, Deerbrook's final bid suffered from the infirmity that it proposed a distribution to unsecured creditors that contravened *§ 726*. In light of this defect, the court had no choice but to reject Deerbrook's final bid as presented. On remand, the bankruptcy court perhaps could reform Deerbrook's final bid to excise the offending provision; however, the reformed bid on its face would not appear to benefit the estate's creditors as much as the payments and waiver on the face of the Dorrohs' final bid. The Dorrohs in their final bid agreed to voluntarily waive any right to payment on account of their claim against the estate and agreed to fund whatever amount was necessary to: (1) satisfy all allowed administrative expenses, (2) pay the Trustee's commission, and (3) pay all timely-filed allowed unsecured claims (other than their own) in full, [*26] plus interest at the legal rate. Thus, unlike Deerbrook's proposal (as reformed), the Dorrohs' proposal on its face provides for full payment to all unsecured creditors other than the Dorrohs.

The Trustee has offered two reasons on appeal why he believes that the Dorrohs' final bid was inferior to Deerbrook's. First, the Trustee has asserted the Dorrohs' final bid presented the Trustee with the prospect of being drawn into further disputes and litigation in both the bankruptcy court and in the state court. According to the Trustee, this additional litigation could prevent the bankruptcy estate from closing for a long time and could cause administrative expenses to escalate drastically and beyond the Dorrohs' ability to pay. Second, the Trustee has asserted he is justifiably skeptical (1) that the Dorrohs can and will fully cover all of the monetary obligations they are committing to in their final bid, and (2) that the Dorrohs will honor all of their obligations without the Trustee having to resort to court enforcement.

The Trustee's concerns are material and could affect the value of the Dorrohs' bid, but the bankruptcy court did not render any findings resolving these issues. Consequently, [*27] we must remand. The bankruptcy court's disposition of these issues is essential, especially since the credibility of the parties is implicated.

For all of the foregoing reasons, the bankruptcy court abused its discretion when it approved the settlement with Deerbrook as a sale of estate property.

**CONCLUSION**

Accordingly, the bankruptcy court's order granting the Trustee's motion to sell and/or settle the Bad Faith Claim shall be VACATED, and this matter shall be REMANDED for further proceedings.